[Crim. No. 930.   Third Appellate District.—March 3, 1927.]

THE PEOPLE, Respondent, v. BARNEY DE FEHR, Appellant.

[1] JUVENILE COURT ACT—MINORS—FELONY—COMMITMENT TO REFORM SCHOOL — JUDGMENTS — CRIMINAL LAW. — When a minor falling within the purview of the Juvenile Court Law (Stats. 1915, p. 1225) has been arraigned upon or convicted of a felony, and the superior court, concluding to exercise its juvenile court powers, suspends trial or pronouncement of sentence to imprisonment and commits him to a reform school, the proceeding does not involve a criminal prosecution or a judgment of sentence.

[2] ID.—RECALL OF COMMITMENT—SUPERIOR COURT—JURISDICTION—DISCRETION.—The superior court, having committed a minor convicted of felony to the reform school under sections 7 and 9 of the Juvenile Court Law (Stats. 1915, p. 1225), retains jurisdiction of the case, and may recall the commitment and impose judgment of sentence upon the minor for the offense with which he was charged, but the court must have substantial reasons for recalling

the commitment for that purpose, and in such a case the question would not be so much one of jurisdiction as whether or not the court had abused its discretion in adopting such a course.

[3] ID.—REASONS FOR RECALLING COMMITMENT—WITNESSES—DISCRE-TION.—It is not an abuse of discretion for the superior court to recall and set aside the commitment of a minor to the reform school, to which he had been committed under the Juvenile Court Law for the crime of pimping as defined by the act of 1911 (Stats. 1911, p. 10) as amended in 1921 (Stats. 1921, p. 96), and sentence him to state prison, where he failed to testify in another case with which he was connected as he had promised to do in accordance with section 1099 of the Penal Code, permitting the discharge of one defendant to be a witness for the people when two or more defendants are included in the charge.

[4] ID.—RIGHT TO SET ASIDE COMMITMENT TO REFORM SCHOOL—SEN-TENCE TO STATE PRISON—CONDITIONS.—The provisions of section 7 of the Juvenile Court Act to the effect that the trustees of the reform school may return a minor to the superior court in which he was convicted for sentence, if he is incorrigible and not amenable to discipline, is not a condition precedent to the right of the superior court to set aside the order of commitment and sentence the minor to prison for the offense charged.

(1) 31 C. J., p. 1109, n. 23.    (2) 31 C. J., p. 1110, n. 57.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order setting aside a commitment to the reform school and sentencing defendant to state prison. Charles O. Busick, Judge. Affirmed.

The facts are stated in the opinion of the court.

T. A. Farrell and George E. McCutchen for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—On the sixteenth day of November, 1925, an information was filed by the district attorney of Sacramento County, in the superior court of said county, charging the defendant with the crime of pimping, as said crime is defined by an act of the legislature of 1911 (Stats. 1911, p. 10) as amended by the legislature of 1921 (Stats. 1921, p. 96.) On the seventeenth day of November, 1925, the defendant was arraigned upon said information, entered

a plea of not guilty thereto, and his trial for the offense so charged fixed and set for the twenty-eighth day of December, 1925, at the hour of 10 o'clock A. M. On the last-mentioned date, the case having been called for trial, the defendant, through his counsel, asked for and was by the court granted permission to withdraw his plea of not guilty theretofore interposed to the information and, being thereupon called upon to plead to said information, entered a plea of guilty to the crime therein charged. On the same day (December 28, 1925), the court, having upon investigation found that the age of the accused was between eighteen and twenty-one years, made an order, under authority of section 7 of the Juvenile Court Law (Stats. 1915, pp. 1225, 1230), and with the consent of the accused, committing the latter to the custody of the Preston School of Industry at Ione, state of California, "there to be detained . . . until he shall have attained the age of twenty-one years." The record shows that, under the authority of said order, the defendant was, within due time after the making thereof, committed to the custody of the above-named state reform school. Thereafter, on the eighth day of March, 1926, the court made the following order, the same being over the signature of the judge:

"To O. H. Close, Superintendent Preston School of Industry, Ione, California:

"You are hereby ordered and directed to produce Barney DeFehr in the Superior Court of the State of California, in and for the County of Sacramento, in Department One thereof, at 10 o'clock A. M. on the 22nd day of March, 1926, then and there to show cause, if any he has, why the order of this court heretofore made that he be confined in the Preston School of Industry in satisfaction of the judgment and sentence of this court on his plea of guilty to a charge of Pimping should not be set aside and made void and that he be on said judgment and sentence committed to the State Prison at San Quentin, for the term prescribed by law."

That the action of the court in making the above order may be understood, it is proper that there should now be presented a statement of the facts leading to the filing of the information against the accused as well as those

occurring subsequently to the making of the order committing the accused to the custody of the reform school. It appears that early in the month of November, 1925, the defendant, accompanied by a girl of about eighteen years of age, went to the city of Sacramento from the city of San Francisco, arriving in the first-named city near the hour of 7 o'clock in the evening. The twain took a room at a hotel in Sacramento and together occupied said room. The record is not clear as to the period of time during which the couple lived together at the hotel referred to, but it is made to appear that, within a very brief period of time after they arrived in Sacramento, the defendant made arrangements with a woman by the name of Mitchell, who, it was and is claimed by the district attorney, was then maintaining a house of prostitution in Sacramento, whereby his young female companion was taken into said house of prostitution for the purpose of carrying on the malodorous business of a prostitute, and that she did for several days following her entrance into the house so occupy herself. These facts became known to the officers, and the young woman was removed from the place, put in proper hands, and both the defendant and the Mitchell woman were arrested, the first named charged, as we have seen, with the crime of pimping, and the last named with the crime of contributing to the delinquency of a minor female. The trial of the case of the Mitchell woman was taken up and proceeded with early in the month of February, 1926. The defendant was subpoenaed by the People to testify in said case and the superintendent of the reform school, where the accused was then under restraint, returned him to the superior court for the purpose of testifying therein. The district attorney called the defendant to the witness-stand in said case and proceeded to question him concerning his knowledge of the character of the house owned and conducted by the Mitchell woman and the circumstances under which the female minor referred to entered said house and her conduct while an inmate thereof. The defendant, in the first instance, stated, in response to his examination as a witness by the district attorney, that he did not know the premises numbered and designated "315½" J Street, in the city of Sacramento (the place where the Mitchell woman is al-

leged to have conducted a house of prostitution and to
which the defendant had taken the female minor men-
tioned), and further that he had never been at said prem-
ises. After giving those answers, and at the afternoon
session of the court, the defendant, upon resuming his
place in the witness-chair, stated in open court that he
desired to correct the testimony given by him at the fore-
noon session of the court. Being permitted to do so, he
stated that he was familiar with and had been at the
premises of the Mitchell woman, at No. 315½ J Street,
Sacramento, prior to his arrest upon the charge of pimp-
ing. The district attorney then propounded a number of
questions pertinent to the Mitchell case and the defendant
in each instance refused to answer the questions, basing
his refusal upon the ground that answers thereto would
tend to incriminate him or subject him to prosecution for
and conviction of offenses other than that to which he had
theretofore pleaded guilty and for which he was then
being held in custody by the authorities of the reform
school. The district attorney made an application to the
superior court for an order vacating and setting aside
the order suspending the pronouncement of judgment in
the case of the defendant, upon his plea of guilty to the
crime of pimping, and committing him to the custody of the
Preston School of Industry in lieu of imprisonment in the
state penitentiary, and in support of said application filed
an affidavit setting forth the facts above stated, and fur-
ther, in substance: That, after the arraignment of the
accused on the charge of pimping, his attorney called on the
district attorney and assured that officer that the defendant
was under the age of eighteen years, and that he would
change his plea to the crime of pimping, as charged against
him, if the district attorney would recommend to the
judge of the superior court that defendant be sent to the
Preston School of Industry "instead of being sentenced
to imprisonment in the state prison"; that he (district
attorney) replied that the defendant would be called as a
witness in the case of the *"People* v. *Vivian Mitchell,*
charged with the crime of contributing to the dependency
of one ———, a girl under the age of 21 years" (referring
to the young woman accompanying defendant to Sacramento
and by the latter placed in the Mitchell house of prostitu-

tion) ; that "deponent further stated to the said T. A. Farrell that if the said Barney DeFehr, when called to the witness-stand, would testify in accordance with a statement he made to deponent after his arrest on said charge of pimping with reference to a conversation had with the said Vivian Mitchell at her place of address, 315½ J Street, in the City of Sacramento, which said statement the said Barney DeFehr stated to deponent was true and which the deponent is informed and believes and therefore avers was true, that said deponent would recommend to said Superior Court that the said Barney DeFehr be sent to the Preston School of Industry; that thereafter, the said Barney DeFehr promised the said T. A. Farrell (his attorney) and Edwin Nicholas, County Detective attached to the District Attorney's office, that he would testify in the case of *People* vs. *Vivian Mitchell* in accordance with said statement made to deponent after his arrest on the charge of Pimping, to-wit: that he visited the said Vivian Mitchell at 315½ J Street, Sacramento, and made preliminary arrangements for said ———, (the minor female referred to) to practice prostitution at said 315½ J Street, that on the 28th day of December, 1925, the said Barney De-Fehr duly appeared in said Superior Court of the State of California, in and for the County of Sacramento, with his counsel, T. A. Farrell, and changed his plea of Not Guilty to Guilty, and was by Hon. Charles O. Busick, Judge of the Superior Court of the County of Sacramento, sent to the Preston School of Industry as punishment for the said offense."

The affidavit of the district attorney then proceeds to state facts relative to the conduct of the defendant when under examination as a witness for the People in the Mitchell case and which are set forth hereinabove, and in conclusion in effect alleges that the conduct of the defendant as a witness in the Mitchell case, after being sent to the reform school instead of being sentenced to imprisonment upon the promise and condition that he would testify truthfully as to the facts within his knowledge pertinent to and in support of the charge against Vivian Mitchell, was such as to render "him an unfit person to be confined in the Preston School of Industry, and that his influence

and example would be detrimental to the welfare of the inmates thereof."

The district attorney, in the proceeding looking to the annulment of the commitment of defendant to the reform school and the imposition upon him, after such annulment, of a judgment of imprisonment, testified that, upon the arrest of the accused and at some time antedating the order of commitment to said school, he interviewed the latter relative to the crime for which he had been arrested; that defendant admitted taking the young girl in question from San Francisco to Sacramento; that at the latter place the two took a room at a hotel; that they registered as "Mr. and Mrs. Reed," that they were unmarried, that, while at the hotel, they had sexual relations, and that, well knowing that prostitution was habitually practiced at the house of the Mitchell woman, he called upon the latter and arranged with her for the entrance of the girl into her said house for the purpose of going "to work" there— meaning by the use of the word "work" that the girl was to be taken in by the Mitchell woman to practice prostitution as a business.

The detective connected with the district attorney's office testified in the same proceeding that he visited defendant in the county jail and asked him if he (defendant) was sent to the Preston School instead of the state prison, he would testify in the case of Vivian Mitchell; that defendant asked the detective what he "wanted him (defendant) to testify to." In reply, the detective said: "Only the truth," to which defendant answered: "Well, I am willing to do that. The district attorney has my statement in his office (referring to the statement to which the district attorney testified and of which a brief recital is given above), and that is all I know about the case. I am willing to testify to those facts."

T. E. Morrin, assistant superintendent of the Preston School of Industry, who was made a witness by the defendant in this proceeding, testified that the accused was delivered to the custody of the reform school on the first day of January, 1926; that he was familiar with the conduct of the defendant during his confinement in said school, and that "it has been very good"; that the accused had, out of the seven thousand credits entitling an inmate of

the school to be released from its custody, earned six hundred credits, with no marks against him.

In disposing of the motion to set aside and vacate the order committing the defendant to the reform school, the judge by whom said order was made, presiding in the present proceeding, stated that, before making the order, he had knowledge of the fact that the defendant had promised that if sent to the reform school in the place of being sentenced to prison he would testify in the Mitchell case on behalf of the People.

The defendant has brought the case to this court on an appeal from the order vacating and setting aside the order committing him to the Preston School of Industry and from the judgment of conviction and of sentence to the state prison.

The defendant, for a reversal, contends: 1. "That the court exhausted its power by the judgment and sentence pronounced December 28th, 1925, and was thereafter without jurisdiction to impose further sentence"; 2. "That, even though jurisdiction be assumed, the evidence did not warrant the making of the order complained of," and, 3. "That the order is an illegal interference with the parole system at the Preston School of Industry."

The position of the defendant, as indicated by the foregoing enumerated points, requires a consideration of sections 7 and 9 of the Juvenile Court Act. (Stats. 1915, pp. 1225, 1230.) It is therein provided that where any person over the age of eighteen years and under the age of twenty-one years is, by indictment or information, accused of a felony or a misdemeanor, except when the crime charged is a capital offense, or an attempt to commit such offense, the judge of the superior court of the county wherein such crime has been committed may, in his discretion, or with or upon the request of the accused, arrest said proceeding at the time of arraignment, or at any time previous to the impanelment of the jury, "and may proceed to investigate the charge against the defendant and all the facts and circumstances necessary to determine the proper disposition to be made of said person, and shall determine whether such person shall be dealt with as a ward of the juvenile court under the provisions of this act. If the court is satisfied upon such investigation that

said person should be declared a ward of the juvenile court and should be dealt with under this act, it may make such order or orders as herein provided for the disposition of such wards. If such person thereafter prove not amenable to the discipline of the state school to which he may be committed, and the trustees thereof shall determine that said person should be committed to a state penitentiary, such person shall be returned to the committing court, and thereafter proceedings shall be had upon the indictment or information commencing at the point at which proceedings were arrested," etc.

The second subdivision of section 7 makes like provision relative to a person over nineteen and under twenty-one years of age, after his conviction of a felony or a misdemeanor charged by indictment or information, and also provides that the judge "may from time to time modify said probation orders, as herein provided in case of persons adjudged wards of the Juvenile Court." Said subdivision of section 7 further provides: "If such person during the period of his commitment to said state institution, proves to be incorrigible or not amenable to the discipline of such institution, and it shall be deemed advisable in the judgment of the trustees of such institution that said person be sent to a state prison, then said person shall be returned to the superior court in which the verdict was rendered, for sentence, and thereupon the court shall pronounce judgment."

Section 9 of said act reads: "Any order made by the court in case of any person subject to the jurisdiction of the court under the provisions of any of subdivisions one to thirteen inclusive of section one of this act may at any time be changed, modified or set aside as to the judge may seem meet and proper; provided, however, that nothing in this act contained shall be deemed to interfere with the system of parole and discharge that is now or may hereafter be provided by law, or by rule of the board of trustees of the Whittier State School, the Preston School of Industry or the California School for Girls, or any similar state institution or institutions, respectively, for the parole and discharge of wards of the juvenile court committed to the said schools or to any similar state institutions hereafter created, or with the management of

the said schools, save that the court committing a ward to any of said schools may thereafter change, modify or set aside said order of commitment upon ten days' notice of the hearing of the application therefor being served by United States mail upon the superintendent of the said school to which said person has previously been committed, and providing that the court shall not then change, modify or set aside said order without due consideration of the effect thereof upon the discipline and parole system of said school or institution.''

As is to be implied from the points urged for a reversal, as they are above stated, the argument of counsel for the defendant in support of the attack upon the action of the court in annulling its previous order committing the accused to the Preston School of Industry is substantially this: That, the defendant being of the age rendering him eligible in that respect to commitment to the reform school, and having pleaded guilty to the information charging him with a felony, the superior court or judge thereof was vested with the power to impose either one of two judgments of sentence, to wit: Judgment of sentence to the state prison, or, if the conditions warranted, judgment of sentence to a reform school maintained by the state for the reform of juvenile offenders against public law and incorrigibles; that, having elected to commit the defendant to the reform school, and made an order accordingly, the court or the judge thereupon lost jurisdiction to set aside such order of commitment and in lieu thereof impose upon him a judgment of imprisonment in the state prison for the identical crime for which he had already been committed to the reform school; that, even if in such case it were in the power of the court or the judge to recall and cancel the order of commitment to the reform school, the court or judge would be without jurisdiction or authority to exercise that power until the trustees of the school to which the juvenile offender had been committed had determined that the person so committed had proved ''to be incorrigible or not amenable to the discipline of such institution,'' and for that reason it is advisable in the judgment of such trustees that such person be returned to the superior court for sentence, etc.

As is to be observed, the proposition first advanced by counsel for the defendant, namely: That, in making an order committing the accused to the reform school, the court below lost jurisdiction thereafter to pronounce judgment of sentence to the state prison upon the accused, proceeds upon the theory that the order of commitment to the Preston School of Industry involved penal punishment. Under the decisions in this state, as well as decisions of other states, the theory is not supportable. To the contrary, where a minor between the ages designated in the Juvenile Court Law has committed a felony or a misdemeanor of which the superior court has triable jurisdiction, has been committed to one of our schools of reform, the judgment of sentence to a penal institution which the court may impose in such case being suspended for such purpose, the purpose is (and such is the obvious purpose of the law authorizing such a course) not to punish the juvenile offender, but to reform and retrieve him by giving him such training and education as will constitute a foundation that will make him, after he has attained his majority and eligible to be discharged from the school, an upright and useful citizen. One of the first of our own cases to deal with the proposition in hand is that of *Ex parte Ah Peen,* 51 Cal. 280. In that case a complaint charging the petitioner therein, aged sixteen years, with the crime of being a vagrant, was filed in the police court of the city and county of San Francisco. Ah Peen, upon the complaint so filed, could have been prosecuted and punished for the crime therein charged, but the police judge, under authority of a statute then existing, arrested proceedings against the defendant and committed him to an industrial school for the reform and education of incorrigible minors. It was contended by the petitioner in the supreme court that the course thus pursued by the judge involved an infringement of his constitutional right to a trial by jury, as guaranteed by certain provisions of the constitution. The supreme court rejected that contention in the following language: "It is obvious that these provisions of the Constitution have no application whatever to the case of this minor child. The action of the police judge here in question did not amount to a criminal prosecution, nor to proceedings against the minor according to the course of the common law, in which the

right of trial by jury is guaranteed. The purpose in view is not punishment for offenses done, but reformation and training of the child to habits of industry, with a view to his future usefulness when he shall have been reclaimed to society, or shall have attained his majority. Having been abandoned by his parents, the state, as *parens patriae,* has succeeded to his control, and stands *in loco parentis* to him. The restraint imposed upon him by public authority is in its nature and purpose the same which, under other conditions, is habitually imposed by parents, guardians of the person, and others exercising supervision and control over the conduct of those who are by reason of infancy, lunacy, or otherwise, incapable of properly controlling themselves. (*Ex parte Crouse,* 4 Whart. (Pa.) 1; *Prescott* v. *State of Ohio,* 19 Ohio, 184 [2 Am. Rep. 388].)''

The case of *Matter of O'Connor,* 29 Cal. App. 225 [155 Pac. 115], involves a discussion of the same proposition and the conclusion arrived at therein was in accord with the conclusion announced in the case of Ah Penn. But the latest discussion of the question is in the case of *In re Daedler,* 194 Cal. 320 [228 Pac. 467], in which Mr. Justice Richards considers the question exhaustively. The petitioner, a minor, a little over the age of fourteen years, was charged with murder. After investigation, and without the usual trial, the superior court committed him to the Preston School of Industry. It was stoutly urged in the *habeas corpus* proceeding that the commitment of the petitioner was illegal, inasmuch as he was, by said order of commitment and his restraint by the industrial authorities thereunder, sentenced to be punished and was being punished for a crime without having been convicted thereof. The contention was not sustained. After supporting its position by what we conceive to be unanswerable reasoning and by a reference to the California cases dealing with the question, the court through Mr. Justice Richards said: ''When we turn from these decisions of our own courts dealing with the objects and purpose of juvenile court laws, we find a wealth of learning grouped and still growing around the statutory efforts of nearly every state in the Union to adequately deal with the problems of juvenile dependence and delinquency through the establishment and operation of juvenile courts; and while, as we have

stated, there was some disposition in the earlier decisions of the courts of certain states to give strict application of the constitutional safeguards of trial by jury and due process of law to proceedings before the juvenile courts and to hold that the proceedings in the cases of minors brought before such courts were criminal in their nature, the main trend of modern authority has been away from this viewpoint and has been distinctly and almost universally in the direction pointed out by this court in the early case of *Ah Peen, supra,* and emphasized in its later decisions above noted.''

[1] It is thus conclusively established that, where a minor falling within the purview of the Juvenile Court Law has been arraigned upon or convicted of a felony, the superior court, concluding to exercise its juvenile court powers in his case, suspends his trial or the pronouncement of judgment of sentence to imprisonment and commits him to a school of reform, the proceeding so adopted does not involve a criminal prosecution or a judgment of sentence. [2] And it is equally clear that the Juvenile Court Law contemplates that, while the minor is in the custody of the reform school authorities and until he has attained the age of majority, the superior court shall retain jurisdiction of his case and may at any time recall the commitment of such school and impose a judgment of sentence upon the minor for the offense with which he is charged. Indeed, sections 7 and 9 of the Juvenile Court Law, as will be observed, expressly so provide. The language of those sections in this particular is not at all characterized by ambiguity. Of course, it is not to be understood from anything that is said herein that we are of the opinion that the superior court may arbitrarily or without just cause recall a commitment of a minor to the reform school ordered under the circumstances such as we have here. To the contrary, we are of the opinion that the court must have substantial reasons for recalling such a commitment and setting it aside and thereupon imposing judgment of sentence to a state prison. In such a case, though, the question would not be so much one of jurisdiction, as it would be of whether or not the court had abused its discretion in adopting such a course. [3] In this case it cannot be said that the court abused its discretion in setting aside the commitment to the reform school and

sentencing the minor to the state prison. The evidence without contradiction shows that the defendant promised that if he were committed to the reform school rather than imprisoned in the state prison for the felony to which he pleaded guilty he would testify to certain material facts in the case of the *People* v. *Vivian Mitchell,* charged, as we have seen, with contributing to the delinquency of the minor female referred to above. At the trial of the case of Mitchell the defendant not only in the first instance falsified his testimony, but later, correcting the same, refused to testify on the ground that his testimony would tend to incriminate him. Under the circumstances of the case the reason for his refusal was not substantial, for while he could have been prosecuted for offenses other than the one to which he had pleaded guilty because of his conduct toward the minor female, it is not to be assumed that the district attorney would have proceeded against him for such other offenses if he had given the testimony as he agreed to. Indeed, the fact that he was committed to the reform school clearly warrants this conclusion and we are satisfied that the defendant must have so understood such to be the case when he was called as a witness. It was by the promise that he would testify to the facts in the Mitchell case which he had narrated to the district attorney that the court was governed to some extent in committing him to the reform school in the place of sentencing him to the state prison. This course was not improper. Indeed, it was in accord with the principle at the bottom of section 1099 of the Penal Code, which provides that when two or more persons are included in the same charge the court may, at any time before the defendants have gone into their defense, on the application of the district attorney, direct any defendant to be discharged, that he may be a witness for the People. Of course, it is to be assumed that the court had found upon investigation that the defendant was a proper person to be taken into the Preston School of Industry. At any rate, it is true that in refusing to testify, as he agreed to do in the Mitchell case, the defendant practiced deception upon the court and the latter was, therefore, justified, after considering the whole situation, in concluding that he was not a fit person to be retained in a school of reform, the purpose of which is to reform re-

fractory minors and to maintain a discipline that will accomplish such a result.

[4] The provision of section 7 of the Juvenile Court Act to the effect that, when it appears to the satisfaction of the trustees of the reform school, the minor during the period of his commitment to said institution proves to be incorrigible or not amenable to the discipline of said institution and it shall be deemed advisable in the judgment of the trustees of such institution that such person be sent to a state prison, then he shall be returned to the superior court in which he was convicted for sentence and thereupon the court shall pronounce judgment, was not intended as setting forth a condition precedent to the right of the court to put in operation its superior court jurisdiction to set aside the order of commitment and sentence the minor to prison for the offense charged. That provision, in our opinion, was intended to clothe the trustees of the reform school with the power of getting rid of an inmate whose incorrigibility would tend to disrupt the necessary discipline of the school. In other words, the legislature intended to clothe the trustees with the power of returning the minor to the superior court when he proved to be incorrigible for sentence, notwithstanding the order of commitment made by the juvenile court. This proposition is mentioned because counsel for the defendant seem to be of the opinion that before the court could exercise its jurisdiction in the matter it was necessary that the minor should be returned to the superior court by the trustees of the reform school with a report of the fact of his incorrigibility and, therefore, his unfitness to remain as an inmate of the institution.

For the reasons herein given, the judgment and the order are affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 2, 1927.