[Crim. No. 4666. In Bank. Nov. 16, 1945.]

THE PEOPLE, Respondent, v. VERNON WILLIAMS, Appellant.

Vernon Williams, in pro. per., for Appellant.

Robert W. Kenny, Attorney General, Ralph W. Scott, Deputy Attorney General, and James F. Brennan for Respondent.

SPENCE, J.—Defendant was found guilty by a jury of burglary in the second degree. He appeals from the judg-

ment of conviction and from the order denying a new trial. As grounds for reversal he urges the following points: (1) that there is a fatal variance between the pleading and proof; (2) that the evidence is insufficient as a matter of law to sustain the verdict; and (3) that the trial court erred in its rulings on the admissibility of evidence.

This appeal follows the second trial of the defendant. The jury disagreed on the first trial. The present record discloses the following matters of evidence: Giacomi Tassi and William Fey, as partners, operated a butcher shop on the corner of Sixteenth and Dolores Streets in San Francisco. Tassi testified that the shop was located at 3297 Sixteenth Street, while Fey placed it at 3299 Sixteenth Street. The latter designation accorded with the information's recital of address in the charge of burglarious entry.

On the evening of November 23, 1943, just before Thanksgiving, Tassi and Fey closed their place of business and locked the doors about 6 p. m. At that time they had in their shop an uncertain number of turkeys, which belonged to various customers who had brought them there to be cleaned. Neither partner was able to state definitely the exact number of turkeys in their possession—their estimates varying from a dozen to eighteen or twenty—nor whether all of the turkeys were tagged or marked. When the partners arrived for business the next morning, November 24, they found that the door of an adjoining garage and the door to their shop had been forced open, and that the large plate glass window on the door to their shop had been smashed. The lock on the door was broken and the floor of the shop was covered with turkeys and papers. Both partners positively testified that four of the turkeys were missing.

Officer Loftus of the San Francisco Police Department testified that he was on duty in the Mission district during the early morning hours of November 24. While patrolling on foot about 1:15 a. m. along Twenty-fourth Street, near South Van Ness Avenue, some eight blocks from the butcher shop, he noticed a Ford panel delivery truck. In the body of the truck he saw some large bags with turkey legs protruding. He watched the truck from a nearby doorway, and in a few minutes he saw two men come out of a barber shop and start to enter the truck. Defendant was admittedly one of the men. The other was one De Mato. According to the officer, defendant was in the act of seating himself behind the

wheel of the truck when he approached and asked the two men for some identification. Defendant produced his draft card. He then asked defendant if he was going to take the truck. Defendant answered that he was not because the truck did not belong to him. When asked why he had climbed into the truck, defendant replied that he had no reason to do so as the truck was not his. The officer decided to arrest the men and took them to a police call box on the corner of Twenty-fourth and Mission Streets. According to his testimony, the men ran away in different directions while he was telephoning. The officer pursued De Mato, chasing him for several blocks and finally shooting at him. He wounded De Mato and after seeing him removed in an ambulance, he returned to the barber shop where he secured a turkey from the proprietor. He put that turkey in the truck with the others. While he was not certain just how many turkeys were then in the truck, he thought there were four or five. Admittedly three turkeys were taken to the police station and ultimately returned to Tassi and Fey.

Both Tassi and Fey testified that the three turkeys returned to them by the police had been stolen from their shop. Tassi stated that after having handled a turkey, he would know it later by just looking at it. With respect to the identification of one of the turkeys, he testified that it belonged to a lady by the name of White; that it carried a tag from the California Poultry Company and had the salesman's name—Al—written thereon. The tag was introduced in evidence. Fey testified that he believed all three turkeys had, for purposes of identification, tags from the California Poultry Company showing the persons to whom they belonged, but only the one mentioned was produced at the trial.

Inspector McCann of the San Francisco Police Department testified that defendant was apprehended by him in a Market Street theatre on December 1, 1943. He stated that he saw defendant on the stairway coming from the balcony; that defendant, upon seeing him, turned and ran up the stairs; that he chased defendant; that defendant tried to escape through a balcony fire door, but was caught when the door failed to open. He further testified that he questioned defendant in the lobby of the theatre and later that day at the Hall of Justice. The officer's testimony is to the effect that during such questioning defendant denied that he could drive an automobile but that in searching through defendant's

papers, he found a driver's license in defendant's name, and that after defendant admitted it was his, he returned it to defendant; that defendant denied that he had stolen the turkeys; that defendant gave the following account of his actions on the night the butcher shop was burglarized: that he had met De Mato in a pool room; that De Mato had asked him to borrow the truck; that he decided that he, rather than De Mato, should drive the truck because it had bad brakes; that De Mato wanted to pick up some turkeys; that when De Mato denied ownership of the truck so did he; that after standing a moment at the police call box, he and De Mato "split and ran." Resting upon defendant's admission during the questioning that the truck was his, that he had a driver's. license and could drive, the officer stated that he never investigated further the ownership of the truck nor did he try to ascertain whether the Motor Vehicle Department had issued a driver's license to defendant.

Inspector Hunt of the San Francisco Police Department also testified as to conversations had with defendant at the Hall of Justice. He stated that he was present during McCann's questioning of defendant, and he generally corroborated that officer's account as above noted, with the exception that he said that defendant then told them that the truck belonged to his brother. With respect to another conversation had with defendant the same day, Hunt testified that defendant said that he had driven De Mato to Eighteenth and Mission Streets; that there De Mato got out and he stayed in the truck; that a few minutes later De Mato returned with four turkeys, which he threw in the back of the truck; that they then drove to the barber shop on Twenty-fourth Street and delivered one of the turkeys. Hunt also testified that defendant had a driver's license with him that day and that it, with other papers, was returned to defendant by McCann, but unlike the latter officer he had not examined the license and was unable to say whether or not it was in defendant's name. Hunt further testified that he saw three turkeys at the Hall of Justice and that on one was the tag that had been introduced in evidence; that at that time there were no bags on the turkeys, as some one had thrown them off. The barber was not produced as a witness.

Defendant took the stand as the sole witness on his own behalf. He produced a letter from the Motor Vehicle Department stating that no operator's license had been issued

to him since 1927. He denied stealing the turkeys, or burglarizing the shop. He denied many of the statements attributed to him by the police officers. He testified that on the night in question he was coming out of the barber shop on Twenty-fourth Street and South Van Ness Avenue when he met De Mato; that De Mato asked him for a ride home; that they were just getting into the truck when Officer Loftus yelled at them from across the street; that upon request for identification he showed the offier. his draft card; that he told the officer that the truck belonged to his brother; that there was no registration on the truck; that the officer then said that he would have to arrest them; that on the way to the police call box at Twenty-fourth and Mission Streets, De Mato and the officer engaged in an argument; that the officer slapped De Mato in the face; that while the officer was phoning, De Mato ran down Twenty-fourth Street and the officer started shooting at him; that when De Mato was about a half block distant, he, defendant, ran away too; that he ran because he was afraid. When asked why he had run from Officer McCann at the theatre, defendant testified that the officer had a pistol in his hand (which McCann denied on being recalled to the witness stand) and that he was afraid that he would be shot. Defendant described in detail his activities on November 23 but produced no corroboration. He testified that he purchased two turkeys that day at the California Poultry Company, and that these were the turkeys in the truck when he was arrested.

Turning now to the points presented by defendant on this appeal, his first argument rests upon the fact that the information charged that he burglarized a butcher shop at 3299 Sixteenth Street, San Francisco, while Tassi, one of the owners of the shop, in his testimony placed it at 3297 Sixteenth Street. But, as above noted in the recital of the evidence in this case, Fey, the other owner, in exact substantiation of the charge, testified that the building was located at 3299 Sixteenth Street—thus a complete answer to defendant's objection of variance between pleading and proof. However, even if the testimony did establish the location of the shop to be 3297 instead of 3299 Sixteenth Street, the variance would not be fatal. Of course, it is elementary that every fact or circumstance necessary to constitute the crime charged must be alleged and proved, and the proof must correspond with the allegations in the

226

pleading. ■ But technical or trifling matters of discrepancy will not furnish ground for reversal. Under the generally accepted rule in criminal law a variance is not regarded as material unless it is of such a substantive character as to mislead the accused in preparing his defense, or is likely to place him in second jeopardy for the same offense. (See many cases collected in Wharton's Criminal Evidence, vol. 2, 11th ed., § 1028, pp. 1799 et seq.; *People* v. *Terrill*, 132 Cal. 497, 499 [64 P. 894]; *People* v. *La Marr*, 20 Cal.2d 705, 711 [128 P.2d 345]; *People* v. *Guerrero*, 22 Cal.2d 183, 187 [137 P.2d 21]; *People* v. *Evanoff*, 45 Cal.App. 108, 112 [187 P. 54]; *People* v. *Harrington*, 92 Cal.App. 245, 254-255 [267 P. 942]; *People* v. *Larrabee*, 113 Cal.App. 745, 747-748 [299 P. 85]; *People* v. *Foster*, 117 Cal.App. 439, 443 [4 P.2d 173].) ■ Here, of course, in preparing his defense defendant was in nowise prejudiced by the alleged variance. ■ Nor can he successfully maintain that he may be placed in jeopardy again for the same offense. It is well settled that on a plea of double jeopardy, extrinsic evidence is admissible on the trial to identify the crime of which a defendant has been convicted. (*Dunbar* v. *United States*, 156 U.S. 185, 191 [15 S.Ct. 325, 39 L.Ed. 390]; *United States* v. *Remington*, 64 F.2d 386, 388.)

■ It was not necessary that the exact address of the building should have been included in the information so long as the building was described with sufficient particularity to show that it came within the classification set forth in the statute, and so long as defendant was apprised of the particular crime against which he had to defend. (Pen. Code, § 459.) ■ The information need go no further in particularizing the place than to allege the county in which the crime was committed. (4 Cal.Jur. § 14, p. 728; *People* v. *Geiger*, 116 Cal. 440, 442 [48 P. 389]; *People* v. *Webber*, 133 Cal. 623, 624 [66 P. 38]; *People* v. *Redman*, 39 Cal.App. 566, 568 [179 P. 725].) The Geiger case is directly in point. There the information charged a burglary in feloniously entering "a building at St. Helena in the county of Napa." The proof was that the building was situated a mile and a half from St. Helena. In holding the variance not to be material, the court said at page 442: "It does not appear that a designation of the local vicinage of the building was at all important for its identification, and unless necessary

for that purpose it was surplusage to allege or prove its situation further than that it was in the county of Napa."

For his second point of argument defendant attacks the sufficiency of the evidence upon the claim that the prosecution failed to prove that the turkeys in the truck were turkeys stolen from Tassi and Fey. While it must be conceded that there is some confusion in the evidence on this issue and the record is not so clear as might be desired, still the sufficiency of the identification of the stolen property and the reconciliation of any discrepancies in the respective witnesses' statements at the trial were for the jury. Pertinent to observe here is the fact that both Tassi and Fey positively identified a certain tag of ownership as having been affixed to a turkey in their shop the night before the burglary, and that tag, later found attached to one of the turkeys in the truck admittedly operated by defendant, was introduced in evidence. In these circumstances it was for the jury to determine whether or not to accredit defendant's entirely uncorroborated account of his previous purchase of the turkeys in his possession at the time of his arrest. "If it were the rule that trial judges or juries must decide cases in conformity with the defendant's testimony, few criminals would ever be convicted." (*People* v. *Rose,* 26 Cal.App.2d 513, 517 [79 P.2d 737].) As was said in *People* v. *Tedesco,* 1 Cal.2d 211, 219 [34 P.2d 467], with regard to the function of an appellate court in reviewing the correctness of factual determinations made in the course of a criminal trial: "This court has uniformly held that where there is evidence tending to support a verdict we cannot disturb the verdict upon the ground that it is not sustained by the evidence; and the application of this rule is strengthened in a case where, as here, the trial court has refused a new trial. It is settled beyond controversy that the weight to be accorded the evidence is a question for the jury."

Connected with the point of defendant's credibility is his third and final argument challenging the propriety of the trial court's ruling in admitting into evidence a record of defendant's previous commitment to the Preston School of Industry. As above stated, defendant was the sole defense witness. On cross-examination he was asked if he had ever been convicted of a felony. He replied he had not. He was then asked if he had ever pleaded guilty to a felony. The objections of his counsel having been overruled, he replied

that he had not. He was finally asked if he had ever pleaded guilty to a burglary. He answered that he had not. Thereafter, over objection, there was introduced into evidence a certain record of the Municipal Court of San Francisco. It showed that on May 16, 1941, defendant pleaded guilty to a burglary, that he was then certified to the superior court, that the degree of crime was there fixed as second degree, and that thereafter defendant, then "nineteen years and nine months" of age, was committed to the Preston School of Industry for a period of two years.

There was no error in allowing this record to be presented to the jury. ▉ In this state the testimony of a witness may be impeached by proof that he has suffered the prior conviction of a felony. (Code Civ. Proc., § 2051.) This rule applies to a defendant who testifies in his own behalf in a criminal trial despite the fact that such evidence may tend to prejudice him in the eyes of the jury. (*People* v. *LaVerne*, 212 Cal. 29, 32 [297 P. 561]; *People* v. *Romer*, 218 Cal. 449, 452-453 [23 P.2d 749].) ▉ The nature of the crime of which he was convicted is a proper subject of inquiry in establishing the fact of his conviction. (*People* v. *David*, 12 Cal.2d 639, 646 [86 P.2d 811], and cases there cited.) That a "conviction" for purposes of impeachment means nothing more than a verdict of guilty is firmly held in (*People* v. *Ward*, 134 Cal. 301 [66 P. 372], where it is said at page 307: "It is contended that at the time the witness testified he had not been 'convicted of a felony'; that to sustain the ruling of the court, it must be assumed, as a matter of law, that the verdict of guilty constituted a 'conviction.' That such verdict does constitute a conviction, within the ordinary as well as the technical meaning of the word, seems to be well settled." (See, also, Pen. Code, § 1151; *In re Anderson*, 34 Cal.App.2d 48, 51-53 [92 P.2d 1020].) A plea of guilty is equivalent to the verdict of a jury. (Wharton's Criminal Evidence, vol. 3, § 1376, p. 2263; *People* v. *Kepford*, 52 Cal.App. 508, 513 [199 P. 64].)

▉ Burglary in the second degree is punishable by imprisonment in the state prison (Pen. Code, § 461) and is therefore a felony. (Pen. Code, § 17.) While it is also punishable, in the alternative, by a county jail sentence (Pen. Code, § 461), its status can be changed only by "a judgment imposing a punishment other than imprisonment in the state prison." (Pen. Code, § 17; *In re Miller*, 218 Cal. 698, 700-701

[24 P.2d 766]; *In re Rogers,* 20 Cal.App.2d 397, 400 [66 P.2d 1237].) This principle is stated in no uncertain terms in the Rogers case as follows at page 400: ''The necessary inference to be drawn from the language of section 17 of the Penal Code that 'when a crime, punishable by fine or imprisonment in a county jail, in the discretion of the court, it shall be deemed a misdemeanor for all purposes *after a judgment imposing a punishment other than imprisonment in the state prison,'* is that *the offense remains a felony* except when the discretion is acually exercised and the prisoner is punished only by a fine or imprisonment in a county jail.''

Defendant's plea of guilty to the burglary charge in 1941, under the record, constituted proof of his conviction of a felony (27 Cal.Jur. § 117, p. 142; *People* v. *Dail,* 22 Cal.2d 642, 652 [140 P.2d 828]; *People* v. *Jacobs,* 73 Cal.App. 334, 351 [238 P. 770]), but his commitment to the Preston School of Industry—unlike a county jail sentence, the alternative penal term prescribed by staute—was not ''a judgment imposing a punishment other than imprisonment in the state prison,'' so that under authority of section 17 of the Penal Code it should thereafter be deemed a mere misdemeanor. Rather, the record shows that defendant was subjected to regular criminal prosecution upon the felony charge and the degree of his crime was determined under the general law; and that thereafter the superior court suspended the pronouncement of judgment of sentence, defendant then being nineteen years of age, and ordered his commitment to the Preston School of Industry ''to reform and retrieve him'' to society as ''an upright and useful citizen.'' (*People* v. *De Fehr,* 81 Cal.App. 562, 572 [254 P. 588].) That such order of commitment did not affect defendant's status with respect to his conviction of a felony is well demonstrated in the De Fehr case, where the court said at page 574: ''. . . while the minor is in the custody of the reform school authorities and until he has attained the age of majority, the superior court shall retain jurisdiction of his case and may at any time recall the commitment of such school and impose a judgment of sentence upon the minor for the offense with which he is charged.'' Accordingly, in the De Fehr case under comparable initial facts— defendant's plea of guilty to a felony charge in the superior court, suspension of sentence and commitment to the Preston School of Industry—it was held proper for the superior court,

with just cause, to recall the order of commitment and sentence defendant to imprisonment in the state prison. The conviction, unmodified as the result of the reform school commitment, furnished the basis for the imposition of sentence involving penal punishment.

Analogous factual considerations formed the basis of the decision in *People* v. *Maloney*, 92 Cal.App. 371 [268 P. 472], that it was not error to admit in evidence for impeachment purposes the record of a reform school commitment. There, after defendant, on cross-examination, had denied previous conviction of a felony, the prosecution introduced documentary proof of his having "pleaded guilty in the Superior Court . . . of violating section 146 California Vehicle Act, a felony" and his "commitment . . . to the Preston School of Industry." In sustaining the propriety of the challenged procedure, the appellate court aptly distinguished the cases of *People* v. *Hoffman*, 199 Cal. 155 [248 P. 504], and *People* v. *Adams*, 76 Cal.App. 178 [244 P. 106], on which defendant here relies as ground for reversal. Accordingly,. it is said at page 373: "The facts in those two cases were very different from the facts in the case at bar. In the Hoffman case the record of the juvenile court was held to be erroneously admitted for the reason that the proceedings in that court are not penal in their character. In the Adams case the error consisted in the admission of evidence showing that defendant had been committed to the Whittier Industrial School at the age of thirteen years. In neither case could it be said that defendant had been convicted of a felony. The commitment which was admitted in evidence in the case now before us did not issue in a proceeding in the juvenile court." Following the Maloney case and quoting at length therefrom is the opinion in *People* v. *Goodwin*, 105 Cal.App. 122, 124-126 [286 P. 1087], holding that the trial court had properly admitted evidence that the defendant had been convicted of grand larceny and had then been committed to the Preston School of Industry. To like effect is *People* v. *Dykes*, 107 Cal.App. 107, 116 [290 P. 102].

Insofar as concerns the controverted point now under consideration, it manifestly is immaterial whether the defendant's plea of guilty be made, as in the Maloney case, to a statutorily designated felony or, as here, it relates to an offense punishable in the alternative but deemed a felony "unless the [trial] court actually exercises [its] discretion by imposing only a

fine or a jail sentence." (*In re Rogers*, 20 Cal.App.2d 397, 400 [66 P.2d 1237].) In either case proof of the defendant's unchanged status with regard to his prior conviction of a felony is the governing factor for impeachment purposes. There is nothing contrary to this reasoning in the decision of *People* v. *Trimble*, 18 Cal.App.2d 350 [63 P.2d 1173]. There the defendant, as in the Maloney case, had a prior conviction of a violation of section 146 of the California Vehicle Act, which section expressly provided that a person committing the acts prohibited "shall be deemed guilty of a felony." After conviction the defendant was sentenced to pay a fine. The question involved was whether such a conviction made him a two-time loser. In holding that it did not, the appellate court stated at page 351: "The characterization given a penalized act by the legislature is immaterial in determining whether or not it is a misdemeanor or a felony, the sole test being the nature and extent of the punishment imposed. (*People* v. *Sacramento Butchers' Assn.*, 12 Cal.App. 471, 489 [107 P. 712].) If the punishment imposed is other than death or imprisonment in the state prison, the penalized act is for all purposes thereafter deemed a misdemeanor. (Sec. 17, Pen. Code.)" But, as above stated, here defendant's prior felony conviction was unaffected as the result of the order of commitment to the Preston School of Industry, since it did not involve "penal punishment." (*People* v. *De Fehr*, 81 Cal.App. 562, 572 [254 P. 588].)

The judgment and order denying a new trial are affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.