[Crim. No. 8621. Second Dist., Div. One. Oct. 15, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. LOUIS KANE, Defendant and Appellant.

Harold J. Ackerman for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and C. A. Collins, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—Defendant was accused in count 1 of grand theft in that on October 15, 1961, he feloniously took an

automobile, then the property of Martin Leasing, Inc. In count 2 he was accused of violating ·section 10851 of the Vehicle Code in that on October 15, 1961, he feloniously drove an automobile, the property of Martin Leasing, Inc., without the consent of and with the intent to deprive the owner of title and possession thereof.

In a nonjury trial he was adjudged not guilty on count 1 and guilty on count 2. He was sentenced to imprisonment in the county jail for nine months.

He appeals from the judgment and the order denying his motion for a new trial. Since such order is not appealable, the purported appeal therefrom will be dismissed.

Appellant contends (1) that there was a fatal variance between the time of the alleged offense and the proof; (2) the court erred in denying defendant's motion for a continuance and in denying his motion for a new trial; (3) the evidence was insufficient to support the judgment; and (4) the court erred in receiving evidence of other alleged acts of misconduct.

Defendant was employed as a salesman by Martin Leasing, Inc., a car leasing company, from approximately September 1, 1961, to November 1961.

Mr. Thomas, the collection manager for the leasing company, testified as follows: He last saw defendant, while defendant was such an employee, "around November" 1961. On February 7, 1962, he saw the defendant driving a 1961 Comet automobile, license No. UTK 846, on Coldwater Canyon Avenue and he (witness) recognized the automobile as one that had been missing about three months. Thereupon, he followed the defendant for a while, and then he (witness) went to the home of Mr. Mahoney, the owner of the leasing company, arriving there about fifteen minutes after he saw defendant driving the Comet. Then they went to defendant's home but did not see the Comet there. Defendant said that he had found two fellows who were driving the car and he had taken it away from them, and that a friend of his was taking the car (at that time) to Schwab's drugstore and was going to call the leasing company from there and tell where the car could be picked up. Mr. Mahoney asked defendant why he had kept the car, and he replied that the two fellows had had it. After leaving defendant's home, Mr. Mahoney called the leasing office. When the witness arrived at the drugstore about an hour later, the car had been picked up at that place by an employee of the leasing company.

Mr. Mahoney, president of the leasing company, testified: Defendant "dropped out of sight" in November 1961 and was not formally discharged, but the witness attempted to find him because he had possession of a 1961 Chevrolet which the witness wanted to recover. It was recovered on December 20, 1961, from a place where it was parked on a street, but at that time no communication was had with defendant. Later that day, in a telephone conversation with defendant, Mahoney asked if defendant knew the whereabouts of the 1961 Comet. He replied that he did not know anything about it. On February 7, 1962, Mr. Thomas came to his (witness') home and they went to defendant's home where Mahoney said to defendant, "I want my car." Defendant said, "I just found it. A couple of kids had it, and I was going to bring it back to you." Defendant stated further that a friend of his was going to take it to Schwab's drugstore and call Mahoney from there. When Mahoney asked him why he kept it so long after he knew Mahoney was looking for it, he replied, "Well, I . . . "; and then he just shrugged. Mahoney and Thomas left, and Mahoney called his office and directed someone to go to the drugstore and watch for the car. Then Mahoney returned to defendant's home and asked him why he did this. He replied, "Well, actually my roommate had the car and as registration change on February 4th is the deadline, he was afraid he would get picked up with the car," and "I am not getting anybody in trouble and I won't disclose his name."

Len Martin, an employee of the leasing company, went to the Schwab drugstore on said February 7th and took the Comet automobile from the parking lot and returned it to the leasing company. At that time the defendant was at the drugstore.

The defendant did not testify.

Mr. Robin, a former vice-president of the leasing company, called as a witness by defendant, testified that when the defendant began working for the company in September 1961 he was given a 1961 Comet car to use; that prior to November 10, 1961, when Robin (witness) left the company, the defendant was driving that car with the permission of the witness.

Mr. Conway, an employee of the leasing company, called as a witness by defendant, testified that in September 1961 during the Pomona Fair the defendant was driving a 1961 Comet on business for the company.

Mr. Plowman, an employee of the company, called as a witness by defendant, testified that he knew that the defendant was driving the Comet in November and December 1961.

When the case was called for trial on June 11, 1962, the prosecution made a motion to amend the information by changing the alleged date of each offense from October 15, 1961, to February 7, 1962. In making the motion the deputy district attorney said that the date, February 7, 1962, had been mentioned in the preliminary transcript as the date the car was recovered; and that in his opinion that is the date that should be alleged. Defendant's counsel objected to the proposed amendment, stating that they were prepared to prove that there was no unlawful taking at the time alleged in the information, October 15, 1961. The judge said that the motion would be denied, but evidence that there was a taking within the three years preceding the filing of the information would be admissible and if it developed that that date is the date of the alleged taking, the information might be amended to conform to proof.

Appellant contends that there was a fatal variance between the time of the alleged offense and the proof. He argues that there was no proof of the time of taking—that the only proof offered by the prosecution was that defendant was driving the car on February 7, 1962. He argues further that it appears that other agents of the leasing company knew that defendant had the car while he was employed by the company, which employment apparently continued (according to the argument) through November and December. From the evidence that defendant "dropped out of sight" in November and unsuccessful attempts were made to find him, the court could have found that the employment ended in November. It was not necessary to allege the precise time at which the offense was committed. (Pen. Code, § 955.) "Under the generally accepted rule in criminal law a variance is not regarded as material unless it is of such a substantive character as to mislead the accused in preparing his defense, or is likely to place him in second jeopardy for the same offense." (*People* v. *Williams,* 27 Cal.2d 220, 226 [163 P.2d 692].) In count 2, upon which defendant was convicted, he was accused of violating section 10851 of the Vehicle Code in that on October 15, 1961, he unlawfully and feloniously drove an automobile, the property of Martin Leasing, Inc., without the consent of and with the intent to deprive the owner of title and possession thereof. In September 1961 the Comet automobile was assigned by the owner to

defendant for use by him as an employee. Under the facts herein it is obvious that the prosecution could not know precisely when the offense occurred. The precise day upon which the use of the automobile by defendant with consent of the owner changed to use without consent of the owner was a fact peculiarly within the knowledge of defendant. It appears that defendant had possession of the automobile from September 1961 to February 7, 1962, when he was observed driving the automobile upon the highway. He did not testify, nor present any defense requiring a precise date to be alleged. It cannot be said that he was prejudiced by the variance between the allegation and proof as to the date of the offense.

 Appellant contends further that the court erred in denying his motion for a continuance of the date of trial. When the case was called for trial at 9:30 a.m., the defendant answered ready, and the prosecution answered ready with the exception that a witness would arrive later in the morning. The case was continued to 10:30 a.m., and then to 11:55 a.m., and then to 2 p.m. At 2 p.m. counsel for defendant said that the defense was not ready, because a vital witness was not present—that he (counsel) had thought that the witness would be present, but after having called the witness' home he had been informed that the witness had not been home for four days. Defendant's counsel stated further that it was his impression that the witness would testify regarding a conversation between defendant and the complaining witness; and that he (counsel) had given a subpoena to defendant, about four days previously, to serve on the witness. (There was no statement that it had been served.) The motion for a continuance was denied. It does not appear that the court abused its discretion in denying the motion.

 Appellant also contends that the court erred in denying his motion for a new trial. The motion, which was upon the basis of newly discovered evidence, was supported by a declaration of M. Darrin, a former sales manager for the leasing company. In the declaration he stated, among other things, that he had given the defendant permission to use the Comet after defendant had left the employment of the leasing company. Darrin is the one referred to in the motion for a continuance as the missing witness. "Facts that are within the knowledge of the defendant at the time of trial are not newly discovered even though he did not make them known to his counsel until later." (*People* v. *Greenwood*, 47

Cal.2d 819, 822 [306 P.2d 427].) In the present case
the trial court could properly conclude that defendant had
not exercised due diligence in attempting to produce the evi-
dence at the trial. The court did not err in denying the
motion for a new trial.

 Appellant asserts further that the evidence was insuf-
ficient to support the judgment. He argues that since Mr.
Mahoney, president of the leasing company, had testified that
the last rental record of the Comet was a rental slip of Sep-
tember 6, 1961, the Comet might thereafter have been
assigned or rented without a further written record having
been made; and that there was further testimony that some
other person could have given defendant permission to use
the Comet. The question as to whether defendant had the
intent to deprive the owner of the automobile was a question
of fact for the determination of the trial court. (*People* v.
*Jones,* 159 Cal.App.2d 808, 810 [324 P.2d 291].) In the
present case there was evidence that the defendant ''dropped
out of sight'' in November; that on December 20 Mr. Ma-
honey asked him, in a telephone conversation, if he knew the
whereabouts of the Comet, and he replied that he did not
know ayything about it. After the automobile had been found,
Mr. Mahoney asked defendant why he kept the car so long
after he knew Mahoney was looking for it. He replied,
''Well, I ... ''; and then he just shrugged. The evidence was
sufficient to support the judgment.

 Appellant also contends that the court erred in receiv-
ing evidence regarding a Chevrolet automobile which Mr.
Mahoney was trying to find. During the direct examination
of Mahoney the judge asked, ''Why were you looking for him
[defendant] ?'' He replied, ''He had the possession of a 1961
Chevrolet that 'I wished returned to my place of business.''
Then the judge asked whether he got that car back. He
replied that he got it back on December 20, 1961. When asked
by the judge under what circumstances he got it back, he
said in substance that a friend of defendant, by name of
Kellogg, had tipped off Mahoney that the car was parked on
the street at a girlfriend's house; and that Mahoney and
Thomas went there and recovered the car without having any
contact with defendant. Counsel for defendant moved to
strike out that testimony on the ground that it was imma-
terial and irrelevant. The motion was denied. Thereafter, the
judge said to the deputy district attorney, ''Well, you don't
claim he stole that ?'' The deputy replied, ''No.'' The judge
said, ''What you are claiming is with regard to the Comet, is

that right?" He replied in the affirmative. The judge said, "Of course, you can't tell from the information. It says, 'an automobile.' " Appellant argues that the testimony regarding the Chevrolet was hearsay, and tended to disparage him and to prejudice the court against him. Before the judge asked why Mahoney was looking for defendant, Mahoney had said that he was trying to find the defendant. The statement made by "a friend" of defendant was hearsay, but the testimony of Mahoney to the effect that he and Thomas recovered the Chevrolet was not hearsay. It appears further that the judge was interested in determining what automobile was the subject of the allegations of the information. In any event, in view of the fact that it was a nonjury trial, it cannot be said that the reference to the Chevrolet incident was prejudicially erroneous.

The purported appeal from the order denying the motion for a new trial is dismissed. The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.