[No. E044069. Fourth Dist., Div. Two. Aug. 10, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND EUGENE PEYTON, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.B. and C.

## COUNSEL

Jean Matulis, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Peter Quon, Jr., and Angela M. Borzachillo, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KING, J.—**

### I. INTRODUCTION

Defendant Raymond Eugene Peyton was convicted of one count of committing a lewd act with duress, fear or force on a child under the age of 14, in violation of Penal Code section 288, subdivision (b)(1)[1] (count 1), three counts of aggravated sexual assault (penetration by a foreign object), in violation of section 269, subdivision (a)(5) (counts 2–4), and one count of aggravated sexual assault (oral copulation), in violation of section 269, subdivision (a)(4) (count 5). All of the convictions involved the 12-year-old daughter, K., of defendant's live-in girlfriend, C. Defendant was sentenced to an aggregate indeterminate term of 66 years to life.

In the published portion of this opinion, we address defendant's claim that his defense counsel was ineffective in failing to object to the filing of an

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

amended information at the close of the prosecution's case when no preliminary hearing had been held. In the unpublished portion of this opinion, we address defendant's claims that (1) there was insufficient evidence to establish that any of the acts were committed with force or duress, and (2) he was unconstitutionally deprived of a jury's findings on the facts used for imposition of consecutive sentences. For the reasons we explain, we reverse defendant's section 288, subdivision (b) conviction in count 1. In all other respects, we affirm the judgment.

## II. THE EVIDENCE PRESENTED AT TRIAL

At the time of the alleged molestations, defendant, a program director, talk host, and newscaster for a radio station in San Bernardino, was in his late 40's. He first met K.'s mother, C., in December 2003. Defendant and C. started dating at that time. When he first met C. she was living in a two-bedroom apartment with her children, J. and K. At some point during 2004, defendant cosigned a lease so that C. and her children, J. and K., could move into a house. He moved into the house on August 1, 2004. He lived there until October 4, 2004, at which time he moved out. Defendant testified that the reason for his leaving was that C., who had been previously diagnosed with colon cancer, was irrational and illogical; they would fight over everything on an almost daily basis. C. died on December 9, 2004.

During the fall of 2004, K. was 12 years old. Her father had died when she was three. She had been homeschooled for approximately three years. K.'s cousin, J.M., with whom K. went to live following her mother's death, described K. as lacking in social skills and able to read and write at only a first grade level. Developmentally she was at the age of about eight. K.'s older brother J. had brain damage stemming from a rollerblading accident.

Following the death of her mother and after moving to J.M.'s house, K. saw defendant three times.[2] After seeing a show about Michael Jackson and his molestation cases, K. did not want to see defendant on a proposed fourth visit. During a conversation with J.M.'s daughter following the third visit, K. told her she had been molested by defendant. Thereafter, K. told J.M. that defendant had molested her.

J.M. testified that before K. told her about the molestations, defendant had asked to see K. because he wanted to stay in touch with her and felt they were bonded. K. had agreed to see him. There were three visits before K. told J.M. that she did not want to see defendant anymore. In October 2005, K. spoke with J.M. about being molested. K. was crying; she wrote

---

[2] K. testified that when she was alone with defendant nothing untoward occurred.

down, "He licked in my privates." K. told J.M. she thought it was normal and it was what dads do. She also said she did not know it was wrong, but after living at J.M.'s house and learning about things, she realized it was wrong.

At trial, K. testified there were four separate incidents of molestation. They occurred in September 2004, around the time of her birthday, while defendant was living at the house. All of the occurrences were during the nighttime when defendant and K. were watching television. At the time of each instance they were the only two people in the room.

On the first occasion they were on the couch. K. was wearing sweatpants and was lying down on her right side, with her head on defendant's lap. Defendant reached his hand inside her pants and touched her vagina with his fingers, under her underwear. He put his fingers just inside the lips of her vagina and did not remove her underwear. He asked K. if it felt good, and she said "yes." K. testified she answered "yes" because she thought that was what defendant wanted to hear.

The second incident happened in either the living room or entertainment room. K. was on the couch watching television. Defendant came to the couch. He reached his hand inside her pants and he inserted his fingers into her vagina. K. believed she was lying in the same position as during the first incident. She did not remember how long the touching continued.

On the third occasion, K. and defendant were on the couch watching television. Defendant was next to the arm of the couch; K. had her head on the arm of the couch and was lying on her back with her upper torso across his lap. He pulled her sweatpants and underwear down to her thighs and started rubbing her legs; shortly thereafter he started touching her vagina with his fingers. She believed he moved her to the edge of his lap by scooting her out a little; in doing so, he grabbed her by the upper bicep and pulled her up. He then bent down and put his tongue into her vagina.

The fourth and last incident occurred in the entertainment room. The lights were off and the television was on. There was a blanket over her at the time. She was wearing jeans with a belt. He unbuckled her belt and reached his hand inside her pants underneath her underwear and rubbed the top of her vagina with his fingers. Her mother walked into the room while this was happening. K. thereafter rebuckled her pants.[3]

---

[3] An audiotape and transcript of a Riverside Child Assessment Team interview of K. were admitted into evidence. K.'s interview statements were generally consistent with her trial testimony. During the interview, K. said: "Um, I don't remember how it happened all the other times. I think I somehow ended up laying down because he always did it when I was laying down." "Well, I would be sitting down. He would come sit next to me. I would eventually lay

K. testified that she did not think defendant was doing anything wrong or against the law during any of the incidents. Nor did she feel embarrassed at the time the conduct was happening. She went along with defendant's touching her because she thought that was what he wanted. She further stated she did not feel she had a choice in the matter and felt pressured to let him touch her vagina. One of the reasons she did not tell anyone right away was she thought it was partly her fault for letting it happen. She was also concerned her older brother J. would be accused of committing the molestations.[4]

Defense evidence was provided by the testimony of defendant and his cousin. Defendant denied the molestations.[5] The essence of the defense evidence was that during C.'s life there had been discussions about defendant adopting J. and K., and C. wanting him to adopt the children. Some of these discussions occurred in front of both J. and K. In September or early October 2004, defendant announced that he was not going to adopt the children. This news threw K. into a rage.

According to defendant and his cousin, who was present at the house prior to going to a San Francisco 49ers game with defendant, K. stated, after hearing the announcement: " 'My father had died and left me. My mother is dying. My stepfather treated me like a maid. I thought you were different. You were like a father to me. I thought you were different, but you're not. I wish I could hurt you like you've hurt me.' "[6] Aside from the defense that K.'s accusations were fabricated to get back at defendant for his failure to adopt J. and K., there was also subtle innuendo that J. was the perpetrator of the molestations.

---

down. He would put my legs on top of his lap." She also said defendant did not move her legs or tell her to do anything with her legs.

[4] During the prosecution's case-in-chief, a tape recording and transcript of a pretext telephone conversation between K. and defendant were also admitted into evidence. While defendant did not admit directly to the molestations, many of his statements were unusual and could easily have been viewed by the jury as implied admissions of unlawful touching. Additionally, admitted into evidence were various "pornographic" photographs seized from a briefcase of defendant, as well as computer contacts with various "pornographic" sites, apparently depicting youngish-appearing females.

[5] Defendant did testify, however, that he would sit with K. with his arm around her. He would sit with his back to the corner of the couch and she would sometimes put her head on his shoulder. His arm would be around her. She would put a blanket across her legs. Her legs would be across his lap and he would massage her legs and her back. He would kiss her.

[6] K. testified she did not want defendant to adopt her. He told her she could call him daddy. She did not want to. Defendant testified that in his mind K. was like his daughter.

## III. DISCUSSION

### A. *Defendant's Section 288, Subdivision (b) Conviction in Count 1 Must Be Reversed, but All Other Charges Were Properly Pleaded*

In October 2006, the prosecution filed an amended complaint charging defendant with four counts of aggravated sexual assault, specifically, three counts of oral copulation (§§ 269, subd. (a)(4), 288a) and one count of sexual penetration (§§ 269, subd. (a)(5), 289, subd. (a)). In December 2006, defendant waived his right to a preliminary hearing, and the prosecution filed an initial information charging defendant with the same crimes charged in the amended complaint. (§ 737 ["All felonies shall be prosecuted by indictment or information," subject to exceptions not applicable here.].) Thereafter, the prosecution filed two amended informations. The first amended information was filed on the first day of trial; the second amended information was filed following the presentation of the prosecution's case. Both amended informations changed the charging allegations to allege three counts of sexual penetration and one count of oral copulation, rather than three counts of oral copulation and one count of sexual penetration as had been alleged in the amended complaint and initial information. The second amended information added a fifth count of aggravated lewd conduct in violation of section 288, subdivision (b)(1).

Defendant claims his trial counsel was ineffective in failing to object to the filing of the first and second amended informations on the ground they alleged crimes that differed from those alleged in the amended complaint and, on the further ground that the newly alleged crimes were not shown by the transcript of any preliminary hearing. On this basis, he claims his section 288, subdivision (b), or lewd act conviction, and two of his sexual penetration convictions must be reversed.

 We agree that defendant's section 288, subdivision (b) conviction in count 1 must be reversed, because it constituted an additional charge not pled in the amended complaint to which defendant waived his right to a preliminary hearing. We further conclude, however, that each of defendant's four section 269 convictions in counts 2 through 5 were effectively pleaded in the amended complaint and that there was not a substantial variance between the amended information upon which defendant was convicted and the amended complaint. Accordingly, we affirm defendant's convictions in counts 2 through 5.

#### 1. *Relevant Background*

Suffice it to say, the pleadings are a mess. In March 2006, the People filed a felony complaint alleging in four counts that defendant violated section 288,

subdivision (a). While the underlying conduct is not identified, it was alleged that the acts took place in October and November 2005, as opposed to 2004. In October 2006, an amended complaint was filed, alleging in three counts that defendant violated section 269, subdivision (a)(4) (the underlying conduct of which was oral copulation in violation of § 288a) and in a fourth count, section 269, subdivision (a)(5) (the underlying conduct being sexual penetration in violation of § 289, subd. (a)). It was again contended that the conduct occurred in 2005. In December 2006, defendant waived his right to a preliminary hearing. Thereafter, an information that mirrored the amended complaint was filed. Defendant was arraigned and pled not guilty. Thus, as of the date of waiving his preliminary hearing, defendant was on notice that the charged underlying conduct involved three instances of oral copulation and one incident of sexual penetration, each in violation of section 269 and all occurring in 2005. On July 2, 2007, the first day of trial, the People filed an amended information alleging that the underlying acts occurred in 2004. While keeping the same number of counts, the allegations were changed to allege that three of the underlying acts involved sexual penetration in violation of section 269, subdivision (a)(5) and one involved oral copulation in violation of section 269, subdivision (a)(4).

On July 10, following the presentation of the People's case, the prosecutor orally moved to amend the complaint. The following transpired:

"THE COURT: Are there any motions?

"[THE DISTRICT ATTORNEY]: Well, there is my motion to conform to proof.

"THE COURT: Yes, we should do that first. [¶] All right. I have in front of me the amended Information. Off the record, [the district attorney], maybe on the record earlier this morning, you indicated that you were going to amend one of the counts to conform to the proof on that count which [K.] indicated there was no actual penetration. Which count and which charge are you seeking?

"[THE DISTRICT ATTORNEY]: It would be one of the [section] 269.5's. It doesn't really matter, since obviously the chronology of the events wasn't really clear in her memory. Count 1 is fine, I believe [section] 269.5.

"THE COURT: Count[s] 1, 3, and 4 are the [section] 269[, subdivision] (a)(5)'s.

"[THE DISTRICT ATTORNEY]: Count 1 can be the [section] 288[, subdivision] (b) pertaining to the jean and belt buckle incident. We'll call it that.

"THE COURT: All right. You are going to allege only a [section] 288[, sub-division] (b) with no [section] 269 allegation.

"[THE DISTRICT ATTORNEY]: Correct, just a lewd act of a child with duress, force, or fear.

"THE COURT: Do you wish to be heard? That does appear to conform to proof.

"[DEFENSE COUNSEL]: That is correct.

"THE COURT: So the Court will by interlineation—we should have a second amended Information.

"[THE DISTRICT ATTORNEY]: I will have one typed tonight, your Honor.

"THE COURT: For now, I will by interlineation strike out the number [section] 269 on Count 1 and insert [section] 288, subdivision (b), crossing out subsection (5), same dates, and crossing out the word 'aggravated,' did commit a sexual assault of a child under 14 years of age, crossing out 'and ten or more years younger than the defendant,' leaving in, 'in that he did willfully and unlawfully commit a violation of Penal Code section 288[, sub-division] (a)'—strike that—'[section] 288[, subdivision] (b)(1), a lewd act by force, violence, duress, menace, fear, and threat.' "

On July 11, the prosecutor told the court he had made a "huge mistake" and should have sought leave to amend the information to allege five counts rather than four. After some discussion, the court, the prosecutor, and defense counsel agreed K.'s testimony supported five counts. In the "belt buckle" incident there was no oral copulation or digital penetration, but in the single instance of oral copulation there was also digital penetration. Hence, it was agreed that the belt buckle incident would be charged in count 1 as a violation of section 288, subdivision (b)(1), and the information would be further amended to allege three counts of digital penetration in counts 2 through 4, and one count of oral copulation in count 5.

On July 12, a second amended information was filed alleging five counts rather than four. Count 1 alleged a violation of section 288, subdivision (b)(1). Counts 2 through 4 alleged violations of section 269, subdivision (a)(5) (digital penetration) and count 5 alleged a violation of section 269, subdivision (a)(4) (oral copulation). The court said: "[Defend-ant], we are going to proceed on Counts 1 through 5. There is an added count, as you heard yesterday in our discussion. Count 1 is a [section]

288[, subdivision] (b), which was conforming to the proof during the course of this trial that there was no penetration in one of the incidents. So it's a lesser charge. But it does conform to what was described by [K.] at trial. Counts 2, 3, and 4 constitute the crime of sexual penetration, and Count 5 is oral copulation. [¶] The Court will enter pleas of not guilty as to each of those counts, and we will proceed, and the jury will be instructed as to those charges, counts, and we will provide them with a copy of the second amended Information."

### 2. *Defendant's Ineffective Assistance Claims*

■ Defendant claims his trial counsel was ineffective in failing to object to the filing of the first and second amended informations. In order to establish an ineffective assistance claim, a defendant must show that his counsel's representation fell below an objective standard of reasonableness, and that but for counsel's error, it is reasonably probable the defendant would have realized a more favorable result. (*Strickland v. Washington* (1984) 466 U.S. 668, 691–692 [80 L.Ed.2d 674, 104 S.Ct. 2052]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216–217 [233 Cal.Rptr. 404, 729 P.2d 839].) The defendant may establish the first prong of an ineffectiveness claim by showing there could be no satisfactory explanation for counsel's act or omission. (*People v. Ledesma, supra*, at p. 218.)

Here, we are concerned with whether there could be no satisfactory explanation for defense counsel's failure to object to the amendments set forth in the first and second amended informations, which were filed after defendant waived his right to a preliminary hearing. We agree that counsel was ineffective in failing to object to the second amended information because it alleged an additional fifth offense—the section 288, subdivision (b) violation in count 1. This charge was not included in the amended complaint to which defendant waived his right to a preliminary hearing. We disagree, however, that defense counsel was ineffective in failing to object to either the first or second amended information regarding any of the four section 269 charges, because these were effectively pled in the amended complaint and there was not a substantial variance between the amended complaint and the amended informations.

### 3. *Defendant's Section 288, Subdivision (b) Conviction in Count 1 Must Be Reversed*

Relying on *People v. Winters* (1990) 221 Cal.App.3d 997, 1005 through 1007 [270 Cal.Rptr. 740] (*Winters*), defendant argues that his waiver of the preliminary hearing "extended only to the right to contest the evidence that would have supported the charges set forth in the complaint, [but] did not bar

him from challenging counts not charged in the complaint." We agree that, because defendant waived his right to a preliminary hearing, his section 288, subdivision (b) conviction in count 1 must be reversed.

In *Winters*, as in the present case, the defendant waived his right to a preliminary hearing. The operative complaint charged the defendant with one count of possessing methamphetamine for sale. Thereafter, the defendant waived his right to a preliminary hearing on the complaint, and an information was filed alleging the same charge. At trial, the prosecution was allowed to amend the information to add a second charge of transportation of methamphetamine, and the jury found the defendant guilty of both charges. (*Winters, supra,* 221 Cal.App.3d at p. 999.) On appeal, the court reversed the transportation conviction on the ground that the amendment adding the transportation charge violated section 1009. (*Winters, supra,* at p. 1008.) The statute provides, in pertinent part, that: "An indictment or accusation cannot be amended so as to change the offense charged, nor an information so as to charge an offense not shown by the evidence taken at the preliminary examination." (§ 1009.)

The *Winters* court explained: "Section 1009 specifically proscribes amending an information to charge an offense not shown by the evidence taken at the preliminary hearing. This rule has remained virtually unchanged for over 80 years. [¶] In the instant case, the preliminary hearing was waived and, thus, no evidence was presented on the complaint which charged only possession of methamphetamine for sale. Respondent has cited no case authority which would allow, over objection, an amendment to the information to add a transportation count on these facts. . . . We have found no exception to this express provision of section 1009 and appellant's conviction of count II of the information, transportation of methamphetamine, must be reversed." (*Winters, supra,* 221 Cal.App.3d at pp. 1007–1008.)

The People urge this court not to follow *Winters* because it misinterpreted section 1009. They argue that section 1009 does not proscribe amending a pleading to conform to proof at trial when, as here, the defendant has waived his right to a preliminary hearing. They criticize *Winters* for relying on dicta from a 1925 case, *People v. Bomar* (1925) 73 Cal.App. 372, 378 [238 P. 758] (*Bomar*), in which the defendant *did not* waive his right to a preliminary hearing. In *Bomar*, the court reversed two convictions that were not based on evidence shown at the preliminary hearing, and drew a comparison between upholding a conviction based on a charge not shown by evidence at a preliminary hearing and upholding a conviction based on an information filed in a case in which no preliminary hearing had been held.

■ As quoted in *Winters*, the *Bomar* court observed: " 'Before any accused person can be called upon to defend himself on any charge prosecuted by information, he is entitled to preliminary examination upon said charge, and the judgment of the magistrate before whom such examination is held as to whether the crime for which it is sought to prosecute him has been committed, and whether there is sufficient cause to believe him guilty thereof. These proceedings are essential to confer jurisdiction upon the court before whom he is placed on trial. To say that he was accorded a fair trial upon an information filed against him without a substantial compliance with these jurisdictional requirements, and, therefore, that there had been no miscarriage of justice, hardly meets the situation. *Such an argument would apply with equal force to the validity of the conviction upon an information filed by the district attorney in a case where no preliminary examination at all had been held.* Such practice would result, in legal effect, in wiping out all provisions of the [C]onstitution and the Penal Code providing for a preliminary examination, and in clothing the district attorney with unlimited authority to file information against whomsoever in his judgment he might consider guilty of crime. We do not believe that it was ever the intention to extend the scope of section 4 1/2 of article VI of the [C]onstitution [now article VI, section 13] to any such limits.' [Citation.]" (*Winters, supra*, 221 Cal.App.3d at p. 1007, quoting *Bomar, supra*, 73 Cal.App. at p. 378.)

■ The *Winters* court thus concluded that, when no preliminary hearing is held, the defendant may not be charged with additional crimes not charged in the pleading to which he waived his right to a preliminary hearing. Allowing such an amendment violates section 1009, even if the amendment did not prejudice the defendant or the defendant had notice of the facts underlying the new charges. (*Winters, supra*, 221 Cal.App.3d at pp. 1006–1007.)

■ We believe the reasoning of the courts in *Winters* and *Bomar* is sound, and that the courts in these cases aptly summarized the letter and spirit of section 1009. Simply put, section 1009 prohibits adding new charges to an accusatory pleading after the defendant has waived his right to a preliminary hearing on that pleading. In enacting section 1009, the Legislature determined that an accusatory pleading cannot be amended based on evidence not taken at the preliminary hearing. And when, as here, no preliminary hearing is held, the pleading cannot be amended to add *additional* charges.

In view of section 1009 and *Winters*, there can be no satisfactory explanation for defense counsel's failure to object to the addition of the section 288, subdivision (b) charge in count 1. This charge was not included in the amended complaint that was on file at the time defendant waived his right to a preliminary hearing. The amended complaint contained only four section

269 charges. The section 288, subdivision (b) charge was alleged as an additional fifth charge following the close of the People's case-in-chief.[7] Further, counsel's failure to object prejudiced defendant because he was convicted of a charge not included in the amended complaint to which he had waived his right to a preliminary hearing. Defendant has thus established both prongs of his ineffective assistance claim relative to his conviction in count 1. (*People v. Ledesma, supra,* 43 Cal.3d at pp. 216–218.) His conviction in count 1 must therefore be reversed.

At oral argument, the People further urged this court not to follow *Winters* because it espouses a "per se rule" that, once a defendant has waived his right to a preliminary hearing on a particular pleading, under no circumstances may that pleading be amended. The problem with such a "per se rule," they argue, is that it encourages prosecutors not to allow defendants to waive their rights to preliminary hearings. (§ 860 [despite the defendant's waiver of preliminary hearing, district attorney or magistrate may require that preliminary hearing be held].) In lieu of the "per se rule," they urge this court to adopt a rule that, when the parties and court agree not to hold a preliminary hearing, the operative accusatory pleading may be amended at any time, including to conform to proof at trial, provided the defendant has notice, from any source, of the evidence to be presented at trial. The sources of notice to the defendant, they argue, may include any information available to the defendant or obtained through pretrial discovery, including police reports. And here, they argue, defendant was on notice, at the time he waived his right to a preliminary hearing, of the nature and number of the charges against him, as alleged in the second amended complaint. We refer to this proposed alternative to the "per se rule" as the "discovery rule."

The People overstate their argument against the so-called per se rule. The rule, as articulated in *Winters*, prohibits amending an accusatory pleading to allege new and additional offenses after the defendant has waived his right to a preliminary hearing on the pleading. (§ 1009.) We fail to see how the so-called per se rule encourages prosecutors not to allow defendants to waive their rights to preliminary hearings. (§ 860.) Prosecutors have every reason to insist on a preliminary hearing whenever it appears the evidence presented at trial may vary to any significant extent from the allegations of the operative pleading.

---

[7] Although the section 288, subdivision (b) charge was a lesser included offense to any one of the four section 269, subdivision (b) charges in the amended complaint (*People v. Tardy* (2003) 112 Cal.App.4th 783, 786 [6 Cal.Rptr.3d 24] [accusatory pleading stating a charged offense provides notice of offense charged and any necessarily included offenses]), it cannot be viewed as a lesser included offense to any of the four section 269 charges because it was pled as an additional fifth charge.

We decline to adopt the so-called discovery rule because it would be at odds with the letter and spirit of section 1009. In *Winters*, the respondent urged the court to uphold the defendant's transportation conviction on the ground the defendant "clearly had notice of the People's evidence of transportation" as indicated by statements the defendant made in a pretrial suppression motion and in view of the evidence presented by the People in their case-in-chief at trial. (*Winters, supra*, 221 Cal.App.3d at p. 1005.) In addition, the People informed the defendant that they were seeking to add the transportation charge following the presentation of their case-in-chief. The defendant objected but did not seek a continuance or leave to conduct further discovery in order to defend against the transportation charge. Thus, the People argued, the defendant would not be prejudiced by the addition of the transportation charge. (*Winters, supra*, 221 Cal.App.3d at p. 1007.)

In rejecting the respondent's argument that the transportation conviction should be upheld because the defendant was aware of the facts supporting it, the *Winters* court reasoned there was no legal support for the argument. (*Winters, supra*, 221 Cal.App.3d at p. 1007.) Nor have we found any legal support, 19 years after *Winters* was decided, to support the People's substantially similar claim that, when a defendant is on notice of the facts supporting a charge, based on information available to him at the time he waived his right to the preliminary hearing, that charge may be added to the accusatory pleading to which he waived his right to a preliminary hearing. For the reasons explained, allowing such an additional charge violates section 1009.

Preliminary hearing transcripts have long been considered the " ' " 'touchstone of due process notice' " ' " to the defendant. (*People v. Graff* (2009) 170 Cal.App.4th 345, 367 [87 Cal.Rptr.3d 827].) And when, as here, a defendant waives his right to a preliminary hearing and no preliminary hearing is held, substituting the preliminary hearing transcript with potentially vague indications that the defendant was on notice of the facts underlying a proffered additional charge would risk depriving the defendant of his due process right to notice of *all* of the charges against him. The contents of police reports and other "discovery" or information available to the defendant would be a poor and potentially dangerous substitute for the "touchstone" of the preliminary hearing transcript.

4. *The Section 269 Charges in Counts 2 Through 5 Were Properly Amended*

All of the pleadings consistently charged defendant with four counts of aggravated sexual assault of a child in violation of section 269. But in the first and second amended informations, the prosecution changed what had originally been charged as three counts of assault by oral copulation (§§ 269,

subd. (a)(4), 288a) and one count of assault by sexual penetration (§§ 269, subd. (a)(5), 289, subd. (a)) to three counts of sexual penetration and one count of oral copulation. Defendant was convicted of the four amended section 269 charges in counts 2 through 5. He argues his defense counsel was ineffective in failing to object to the amendments to these charges, and he was prejudiced because he was convicted of *two* counts of sexual penetration that were not charged in the amended complaint.

As pertinent here, the issue is whether the second amended information charged crimes different than those alleged in the amended complaint, thus depriving defendant of his due process right to notice of the allegations. Defendant maintains that a violation of sections 269, subdivision (a)(4) and 288a (assault by oral copulation) is simply not the same crime as a violation of sections 269, subdivision (a)(5) and 289, subdivision (a) (assault by sexual penetration). Again, defendant relies on *Winters, supra,* 221 Cal.App.3d at pages 1005 through 1007, for the proposition that his waiver of the preliminary hearing extended only to his right to contest the evidence underlying the charges alleged in the amended complaint, but did not bar him from challenging counts not alleged in the amended complaint.

■ We disagree that the amendments to the section 269 charges in this case violated section 1009 and defendant's commensurate due process right to notice. "It is a fundamental principle of due process that 'one accused of a crime must be "informed of the nature and cause of the accusation." [Citation.]' [Citation.] This requirement is satisfied when the accused is advised of the charges against him so that he has a reasonable opportunity to prepare and present a defense and is not taken by surprise by the evidence offered at trial. [Citations.]" (*People v. Ramirez* (2003) 109 Cal.App.4th 992, 999 [135 Cal.Rptr.2d 542].) " 'Notice of the specific charge is a constitutional right of the accused. [Citation.] ■ An information which charges a criminal defendant with multiple counts of the same offense does not violate due process so long as (1) the information informs defendant of the nature of the conduct with which he is accused and (2) the evidence presented at the preliminary hearing informs him of the particulars of the offenses which the prosecution may prove at trial. [Citations.] *The information plays a limited but important role—it tells a defendant what kinds of offenses he is charged with* and states the number of offenses that can result in prosecution. However, the time, place, and circumstances of charged offenses are left to the preliminary hearing transcript. This is the touchstone of due process notice to a defendant. . . .' [¶] . . . [¶] . . . [A]n information need *not* notify a defendant of all the particulars of the crime charged. *That role is left to the preliminary hearing transcript.* Where . . . the particulars are *not* shown by the preliminary hearing transcript, the defendant is *not* on notice in such a

way that he has the opportunity to prepare a meaningful defense." (*People v. Pitts* (1990) 223 Cal.App.3d 606, 904–905 [273 Cal.Rptr. 757], first italics added (*Pitts*).)

In discussing the due process aspects of the accusatory pleading and preliminary hearing transcript in the context of section 288 offenses not shown by evidence at the preliminary hearing, the court in *People v. Graff, supra,* 170 Cal.App.4th 345 observed that in *People v. Jones* (1990) 51 Cal.3d 294 [270 Cal.Rptr. 611, 792 P.2d 643], "the Attorney General argued, much as respondent does here, that as long as ' "the preliminary hearing provides evidence of a certain number of lewd acts upon the specified victim 'on or about' the time frame in issue," ' the defendants were ' "on notice to defend themselves against *any touchings* . . . ." ' . . . 'This argument ignores the differences in function between an information and the transcript of the preliminary hearing. It is true that an information need *not* notify a defendant of all the particulars of the crime charged [because] [*t*]*hat role is left to the preliminary hearing transcript.* Where . . . the particulars are *not* shown by the preliminary hearing transcript, the defendant is *not* on notice in such a way that he has the opportunity to prepare a meaningful defense.' [Citation.] . . . '[A] preliminary hearing transcript affording notice of the time, place and circumstances of charged offenses " 'is the touchstone of due process notice to a defendant.' " ' " (*People v. Graff, supra,* at pp. 366–367, first italics added.)[8]

■ When, as here, the defendant waives his right to the preliminary hearing, with the acquiescence of the district attorney and court, and there is therefore no preliminary hearing transcript upon which new or amended

---

[8] In *Pitts, supra,* 223 Cal.App.3d at pages 905 and 906, the court posed the following hypothetical: A defendant is charged in statutory language with two counts of violating section 288, but the preliminary hearing transcript shows he committed two oral copulations and two lewd touchings. The court concluded that, absent unusual circumstances, the defendant's due process rights would not be violated if, at trial, the information is amended to allege two additional section 288 violations. The court reasoned that the defendant was on notice from the preliminary hearing transcript as to what charges he might have to defend against at trial. The court then changed the hypothetical to suppose that the evidence at trial showed two acts of sodomy and two acts of sexual intercourse, and the information is amended accordingly. In this scenario, the amendment would violate the defendant's due process rights because the preliminary hearing transcript did not put him on notice of the "specific acts" he had to defend against. (*Pitts, supra,* at p. 906.) Moreover, the amendment in the specific acts underlying the charges, the court said, was material because it would affect medical testimony, among other particulars of the prosecution and defense case, and prejudice the defendant's ability to present his defense. The court disagreed that the defendant's due process rights would not be violated, in the second scenario, simply because he knew to defend against four violations of section 288. This proposition, the court said, " 'assumes the guilt of the accused . . . [and is] foreign to our system of criminal justice.' [Citation.]" (*Pitts, supra,* at p. 907.) The court cautioned, however, that all of the particulars of an offense, including the time and place of the offense, and even the specific acts underlying the offense, are not necessarily material. (*Ibid.*)

charges may be based, the pleading on file at the time of the defendant's waiver must serve as the touchstone of due process notice to the defendant of the time, place, and circumstances of the charged offenses. (See *Winters, supra,* 221 Cal.App.3d at pp. 1006–1007.) Thus, it is the amended complaint that must be looked to for purposes of determing whether defendant received due process notice. (Cf. *People v. Butte* (2004) 117 Cal.App.4th 956, 959 [12 Cal.Rptr.3d 221] [plaintiff who waives preliminary hearing forfeits right to complain on appeal of vagueness in accusatory pleading].)

"Under the generally accepted rule in criminal law a variance [in pleadings] is not regarded as material unless it is of such a substantive character as to mislead the accused in preparing his defense . . . ." (*People v. Williams* (1945) 27 Cal.2d 220, 226 [163 P.2d 692]; see also *Pitts, supra,* 223 Cal.App.3d at pp. 905–907.) And "[n]o accusatory pleading is insufficient, nor can the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not prejudice a substantial right of the defendant upon the merits." (§ 960.)

Here, all of the pleadings, including the amended complaint and second amended information, consistently alleged four section 269 charges based on either oral copulation by means of force or duress, in violation of section 288a, subdivisions (c)(2) or (3), or (d), or sexual penetration by means of force or duress, in violation of section 289, subdivision (a).[9] Each pleading dealt with one victim and with conduct occurring over a very limited timeframe. And the only difference between the amended complaint, to which defendant waived his right to a preliminary hearing, and the second amended information, upon which defendant was convicted at trial, is that the bases of two of the four alleged section 269 charges were changed from oral copulation to sexual penetration.

Moreover, the amendments did not prejudice defendant's ability to prepare and present his defense to the charges as originally alleged. Defendant denied engaging in any illegal conduct whatsoever, whether oral copulation or sexual penetration. Nowhere during the trial, whether through cross-examination, direct examination or argument, does it appear that the specific conduct underlying the section 269 charges was of significance.[10]

This case is unlike *People v. Burnett* (1999) 71 Cal.App.4th 151 [83 Cal.Rptr.2d 629], where a firearm possession conviction was overturned

---

[9] In this respect, the second amended information is unlike the second hypothetical discussed in *Pitts, supra,* 223 Cal.App.3d at pages 906 and 907. (See *ante,* fn. 8.)

[10] This is especially so in light of the fact that we have found that there is substantial evidence to support the sexual assaults on the overall concept of duress, as opposed to "force," with its divergent legal definitions.

because it was based on a totally distinct and separate incident of possession from that shown by the evidence at the preliminary hearing. It is unlike *Gray v. Raines* (9th Cir. 1981) 662 F.2d 569, where the defendant was charged in the information with forcible rape. After defendant put on a defense that the victim consented to the conduct, the prosecution was allowed to amend the information to allege statutory rape. In reversing the conviction, the court concluded that the defendant's due process rights were violated because he did not have notice of the specific charge of which he was convicted, and his substantial rights were prejudiced. And within the context of our present discussion, it is also unlike *Winters* where, after the filing of the initial information following the defendant's waiver of a preliminary hearing, the district attorney was allowed to add a whole new charge.

We therefore hold that defendant's convictions of the two counts of aggravated assault by sexual penetration were not in significant variance from the charges in the amended complaint; the convictions are therefore lawful. The operative pleading under which defendant was convicted did not charge him with violating a different Penal Code section from that alleged in the amended complaint. Both pleadings were based on the same course of conduct which occurred over an extremely limited time period and involved the same victim. Both pleadings dealt with the same underlying acts, oral copulation and sexual penetration. Defendant was not presented with a moving target; he was fully aware of what he had to defend against. Additionally, the punishment for the crimes charged in the amended complaint and the second amended information were identical. The substantial rights of defendant were simply not implicated.

Lastly, defendant argues there is insufficient evidence—indeed, he argues, there is *no* evidence—that he committed any of the offenses charged in the second amended information because it alleged that each crime occurred "on or about October 1, 2005," and the evidence presented at trial clearly showed that, by that time, defendant had moved out of the home he rented with C., C. had died, and K. was living with J.M. Instead, the evidence showed that all of the crimes were committed during the fall of 2004.

The prosecution was not required to show that the crimes took place "on or about October 1, 2005," but only "reasonably close to [that day]." (Judicial Council of Cal. Crim. Jury Instns., CALCRIM No. 207 [Proof Need Not Show Actual Date].) The precise date on which an offense was committed need not be stated in an accusatory pleading unless the date is material to the offense (§ 955), and the evidence is not insufficient merely because it shows the offense was committed on another date. (*People v. Starkey* (1965) 234 Cal.App.2d 822, 827 [44 Cal.Rptr. 738].) The October 1, 2005, date was not material to any of the charged offenses. Nor has defendant shown he was

prejudiced by the variance between the October 1, 2005 date, as set forth in the second amended information, and the evidence at trial that the offenses occurred during the fall of 2004.

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV. DISPOSITION

Defendant's section 288, subdivision (b) conviction in count 1 is reversed and his six-year sentence on count 1 is stricken. The matter is remanded to the trial court for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

Hollenhorst, Acting P. J., and Miller, J., concurred.

A petition for a rehearing was denied September 9, 2009, and appellant's petition for review by the Supreme Court was denied November 19, 2009, S176399.

---

* See footnote, *ante*, page 642.