Filed 4/29/14  P. v. Zepeda CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. DAVID ZEPEDA, Defendant and Appellant. | D064571 (Super. Ct. No. SCD235425) |

APPEAL from a judgment of the Superior Court of San Diego County, Amalia L. Meza, Judge.  Affirmed.

Patrick J. Hennessey, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lise S. Jacobson and Sean M. Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

A grand jury indicted David Zepeda on a total of 129 counts involving real estate fraud, forgery, filing false instruments and conspiracy.  During his jury trial Zepeda

entered into a plea agreement under which he would plead to 14 felony counts and admit being involved in thefts in excess of $500,000 (Pen. Code,[1] § 186.11) and agreed the losses to the victims exceeded $3.2 million (§ 12022.6, subd. (a)(4)). The parties stipulated to a sentence of 15 years eight months in prison.

Prior to sentencing Zepeda requested to replace appointed counsel. The court held a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118. Following that hearing the court denied Zepeda's request. Zepeda then requested to withdraw his guilty pleas, stating that he did not get "a fair deal" and that he did not have an opportunity to "be heard sufficiently or present his case the way he wanted." The court scheduled a hearing on the motion. Zepeda did not testify, call any witnesses or submit any written testimony about facts which would support his motion. The trial court denied the motion to withdraw the plea and sentenced Zepeda to the stipulated term.

Zepeda appeals contending the court erred in denying his motion to withdraw his guilty pleas. The record demonstrates that Zepeda knowingly and voluntarily entered his guilty pleas and that he has failed to meet his burden of showing good cause to withdraw his pleas.[2]

After briefing was completed, Zepeda filed a supplemental brief. In that brief, Zepeda argued for the first time on appeal, that his plea to count 62 was invalid, because

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

[2]     The offenses to which Zepeda pleaded guilty are conspiracy (§ 182, subd. (a)(1)); identity theft (§ 530.5, subd. (a)); filing false instruments (§ 115, subd. (a)); forgery (§ 470, subd. (d)); and rent skimming (Civ. Code, §§ 890 & 892).

2

he was not charged in count 62 of the indictment. He contends his plea to count 62 must be reversed and the matter remanded to the trial court. Indeed, Zepeda was not charged in count 62, rather that count referred only to a codefendant, thus there was clearly an error in the plea process. As we will explain, however, it is evident this was an inadvertent error, as Zepeda had been charged with the same statutory violation in two other transactions involving the same type of false documents regarding the same property. Counts 60, 61 and 62 involve the same crime, by Zepeda and others committed at different times. Given that Zepeda bargained for and received a stipulated sentence, based in part on the offense, erroneously stated as count 62 instead of either counts 60 or 61, we will find that he received the benefit of his bargain and should not now, on appeal, be able to avoid the bargain for what is essentially a clerical error.[3] Thus, we will affirm the judgment.

Since this appeal is from the denial of a motion to withdraw guilty pleas, and does not implicate the facts of the underlying offenses, we will omit the traditional statement of facts.

---

[3] We are also influenced by the fact that after the pleas the parties stipulated to the destruction of the evidence. Therefore trial on remand would be unlikely and Zepeda would receive an unwarranted windfall.

3

DISCUSSION

I

*MOTION TO WITHDRAW THE GUILTY PLEAS*

Prior to trial, Zepeda apparently suffered two debilitating strokes. He was bedridden and required full time nursing. His ability to speak was also impaired. Before the jury trial on the merits of the offenses, Zepeda had been found competent to stand trial by a separate jury.

A jury trial commenced in May 2013. After the jury was selected and a number of witnesses were called to testify, Zepeda requested to accept a plea agreement that had been previously offered by the prosecution. A plea agreement was reached between the parties as is evidenced by the change of plea form submitted by Zepeda. Due to Zepeda's difficulties in communicating, the trial court undertook a lengthy and meticulous interrogation of Zepeda. At some points Zepeda spoke loud enough for the court to hear. At other times Zepeda responded by mouthing the words or by nodding or shaking his head. The court carefully reviewed each question with Zepeda in order to insure that his responses had been accurately recorded.

During the colloquy with the court Zepeda stated he understood the proceeding and understood his rights and the consequences of his plea. Counsel concurred with the court that Zepeda was knowingly changing his plea.

Although Zepeda did not testify at the motion hearing, he claimed he was under duress and had been threatened when he entered the guilty pleas. He stated his responses

4

by nodding indicated he understood what the judge as saying, but not that he agreed with the concepts.

Zepeda initialed the change of plea form with the initials "TDC," by which he meant "threats, duress and coercion." At which point the trial court said: "All right. So, I think, sir, that you were playing games at that point."

The decision to grant or deny a motion to withdraw a guilty plea is within the sound discretion of the trial court. (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1456.) However, guilty pleas should not be lightly set aside as there is a value in the finality of criminal proceedings. (*People v. Hunt* (1985) 174 Cal.App.3d 95, 103.) A trial court's decision on such a motion will not be overturned in the absence of a clear abuse of discretion. (*People v. Shaw* (1998) 64 Cal.App.4th 492, 496.)

Under section 1018, a defendant must show good cause to set aside his plea by clear and convincing evidence. (*People v. Shaw, supra*, 64 Cal.App.4th at p. 496; *People v. Huricks* (1995) 32 Cal.App.4th 1201, 1207.)

In this case, Zepeda has presented virtually no evidence to support his motion. His complaints were about counsel not doing what he wanted, or that he felt coerced, apparently by the way the trial was going. In any event, it was Zepeda who wanted to stop the trial after a week and take a deal, which changed his prison exposure from 92 years to a much reduced term. Zepeda's use of initials "TDC" in the change of plea form is certainly not inconsistent with the trial court's observation that Zepeda was "playing games with the court" in the plea process. Zepeda managed to stop the jury trial and then tried to set aside his pleas on an unsubstantiated claim of duress.

5

The record supports the trial court's decision to deny Zepeda's motion.

II

*THE PLEAS TO THE WRONG COUNT*

As we have noted, Zepeda was charged in counts 60 and 61, along with codefendants with filing false instruments (§ 115, subd. (a)) involving the same property. A single codefendant was separately charged in count 62 with a violation of section 115, subdivision (a), with regard to false documents filed on the same property at a later time.

After the start of the trial, the parties agreed to a settlement in which Zepeda would plead guilty to 14 felony counts and in return the remaining counts would be dismissed and he would receive a stipulated term of 15 years eight months. The genesis of this particular problem is found in the prosecutor's offer that erroneously included a plea to count 62, which should have been either count 60 or 61. However, Zepeda never objected to a plea to count 62 and never raised the question of not being charged in that particular count and raised the issue here for the first time in a supplemental opening brief.

Zepeda contends the conviction for count 62 must be reversed. The People respond that Zepeda bargained for a stipulated sentence built in part on an eight-month sentence for count 62. He pleaded guilty to count 62 and received the benefit of his plea agreement. Thus the People argue we should affirm the conviction and treat the error in the number of the count as not prejudicial. We agree with the People that this error in count selection was inadvertent and that Zepeda's plea of guilty to that count, as part of a stipulated sentence agreement, should not be reversed.

6

"A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles. [Citations.] . . . 'The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties.' [Citations.]" (*People v. Shelton* (2006) 37 Cal.4th 759, 767; *People v. Rabanales* (2008) 168 Cal.App.4th 494, 503.)

In *People v. Hester* (2000) 22 Cal.4th 290, 294-295, the court dealt with a challenge to a negotiated sentence. The defendant contended that the sentence could not lawfully be imposed because to do so would violate section 654. The court rejected the challenge to a plea bargain which called for a specific sentence. The court said, in part: "Where the defendants have pleaded guilty in return for a *specified* sentence, appellate courts will not find error even though the trial court acted in excess of jurisdiction in reaching that figure, so long as the trial court did not lack *fundamental* jurisdiction. The rationale behind this policy is that defendants who have received the benefit of their bargain should not be allowed to trifle with the courts by attempting to better the bargain through the appellate courts." (*Hester, supra* at p. 295; italics in original.)

In this case, Zepeda pleaded guilty to a violation of section 115, however, the count for the offenses charged was a different date than the one to which he entered his plea. However, the count to which he pleaded guilty was clearly part of the basis of arriving at the stipulated sentence. The parties intended for Zepeda to receive a consecutive eight months for a violation of section 115 and that is exactly what he received. As we have previously noted, the parties stipulated to destruction of the

7

evidence after sentencing.  Thus, if we were to vacate the plea to count 62 and remand the case for retrial, it is likely Zepeda could not be prosecuted for the offense and would receive a windfall, based on what is clearly an inadvertent error in count selection.

Zepeda alternatively contends the plea must be vacated because there was no factual basis stated for count 62.  We again disagree.  First, the parties stipulated to allow the trial court to consider the grand jury transcript as the factual basis for the plea. Further, when Zepeda entered his plea to count 62 the court asked whether he was pleading guilty to filing a false instrument "on or about May 19, 2010" to which Zepeda said "guilty."  As the People correctly argue, convictions based on accusatory pleadings which do not precisely pinpoint the date of the offense are not rendered invalid because of variances from the date accused and the date committed.  (*People v. Peyton* (2009) 176 Cal.App.4th 642, 660-661.)

Zepeda interrupted the trial, which was well underway, in order to gain a favorable plea agreement and limit his custody risk by a stipulated sentence.  On this record it is without dispute that Zepeda got the deal he was seeking.  The number of counts, the selection of offenses and the precise sentence were all within the scope of his bargain. Therefore, following the guidance provided by *People v. Hester, supra,* 22 Cal.4th at pages 294 to 295, we decline to vacate the plea to a violation of section 115.

8

DISPOSITION

The judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

NARES, J.

IRION, J.

9