Filed 6/2/25  P. v. Barrios CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>PAUL BARRIOS,<br><br>    Defendant and Appellant. | F087136<br><br>(Super. Ct. No. F22905169)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Alvin M. Harrell, III, Judge.

Wallin & Klarich, Jonathan M. Lynn, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary, and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Paul Barrios sexually assaulted his brother-in-law.  Barrios was found guilty on three counts, and was sentenced to 25 years to life on count 1 plus an eight-year consecutive term on count 3.

On appeal, Barrios argues that:  (1) the prosecutor committed misconduct during her rebuttal argument by misstating evidence and lessening the burden of proof; (2) Barrios's due process rights were violated because he was not informed of one of the charges against him; (3) the trial court erred in denying Barrios's motion for a new trial based on juror misconduct; (4) the trial court erred by allowing evidence of a prior sexual offense pursuant to Evidence Code section 1108; (5) the trial court erred by imposing a consecutive term on count 3; and (6) the combination of errors violated Barrios's right to due process.  The People disagree.

We reverse Barrios's conviction on count 3 and remand to the trial court to conduct further proceedings consistent with this opinion.  In all other respects, the judgment is affirmed.

## PROCEDURAL HISTORY

On November 7, 2022, the Fresno County District Attorney filed an information charging Barrios with sodomy of a child 10 years old or younger (Pen. Code,[1] § 288.7, subd. (a); count 1); sodomy of a person under age 14 with a 10-year age difference (§ 286, subd. (c)(1); count 2), and committing a lewd or lascivious act upon a child under age 14 using force, violence, duress, menace, or fear (§ 288, subd. (b)(1); count 3).

On January 13, 2023, Barrios was found guilty by a jury on all counts.

On August 31, 2023, Barrios filed a motion for a new trial.  On October 13, 2023, the trial court denied the motion.

On November 6, 2023, the trial court sentenced Barrios.  The court imposed an aggregate term of 25 years to life plus eight years, consisting of:  25 years to life on

---

[1]  Undesignated statutory references are to the Penal Code.

count 1 and eight years (the middle term) on count 3.  The court also imposed a term of six years on count 2 (the middle term), but it stayed this sentence pursuant to section 654.

On November 6, 2023, Barrios timely filed a notice of appeal.

## FACTUAL SUMMARY

**Prosecution Case**

### *A.R.'s Testimony*

A.R. was born in December of 2004.  He had three brothers and three sisters.  One of his sisters, L.R., married Barrios.  A.R. spent time at L.R. and Barrios's apartment in Fresno.  Sometimes, A.R. was alone with Barrios in the apartment.  A.R. was 10 to 12 years old during this time.

On one such occasion, Barrios asked A.R. if he wanted to "play fight."  This was something they had done before.  However, this time, Barrios bent A.R. over the couch.  Barrios then pulled down the bottom half A.R.'s clothing and his own clothing.  He put his penis into A.R.'s anal cavity.  A.R. started crying.  Eventually, A.R. felt something come out of Barrios's penis, and Barrios stopped.

Barrios told A.R. that if he ever told anyone what happened, Barrios would kill A.R.'s sister.  A.R. believed Barrios because he knew that Barrios owned firearms.  So, A.R. did not immediately tell anyone about what happened.

On another occasion, Barrios grabbed A.R.'s head and forced A.R. to orally copulate him.  A.R. could not remember if anyone else was at the apartment when this occurred.  A.R. did not tell police officers about this incident or testify about this incident at the preliminary hearing because he did not want to talk about it.

The first person A.R. told about what Barrios had done to him was his mother.  A.R. was having an anxiety attack, and his mother drove him to the hospital.  His mother's former significant other was in the car as well.  While they were in the car, A.R. started screaming.  A.R.'s mother asked him what was wrong, and he told her, in general

3.

terms, what had happened.  He had not planned on telling his mother because, at the time, he was ashamed.

### D.P.'s Testimony

D.P. had six children, including A.R. and L.R.  L.R. married Barrios, and they had children together.  At some point, they lived together in an apartment in Fresno.  That apartment was "no more than two light streets away" from where D.P. and A.R. lived.

A.R. would go to that apartment.  More than once, A.R. came home and told D.P. that his buttocks hurt.  D.P. checked him, but she did not see anything.

On one occasion, A.R. told D.P. that there was "white stuff" coming out of his buttocks.  D.P. did not see anything coming out of his buttocks, but she did see "white stuff" in the toilet.  D.P. asked him if anyone was touching him, but he denied it.  After this incident he became angry, and he was getting in trouble at school (although one of his sisters died during this same time).

About a year before the trial, A.R. had a panic attack.  His chest hurt and he could not breathe.  D.P. and her boyfriend took A.R. to the hospital.  D.P.'s boyfriend drove.  While they were in the car, D.P. asked A.R. what was wrong.  A.R. told her that he had been molested.

When they got to the hospital, D.P. told a nurse that A.R. had been sexually assaulted.  D.P. also asked A.R. if it was Barrios who molested him, and A.R. said yes.  After they got home from the hospital, D.P. called the police.

### L.R.'s Testimony

L.R. was previously married to Barrios and had children with him.  They had an "on and off" relationship from 2013 to 2020.

Barrios was born in August of 1989.

In July of 2014, L.R. moved into an apartment in Fresno.  L.R. lived in the apartment with her three children (one of which she had with Barrios).  Barrios did not

live there, but he would stay there on his days off. He owned firearms and would bring them to the apartment.

A.R. "came over a lot" to play with the three children. At times, Barrios and A.R. were alone in the apartment. Barrios and A.R. were close. They played "a lot" of video games together.

L.R. moved out of the apartment in June of 2015.

### Detective Sean McInerney's Testimony

In November of 2021, Sean McInerney was employed as a detective with the City of Fresno.

On November 12, 2021, McInerney interviewed A.R. regarding an allegation he made of being sexually abused. McInerney had difficulty getting information from A.R. At times, A.R. became upset, cried, and shook uncontrollably.

A.R. described one incident, but stated it happened more than once. A.R. also told McInerney that Barrios had firearms in the apartment in Fresno. McInerney attempted to get details about the other incidents of sexual abuse, but it was "very difficult." Eventually, McInerney determined that A.R. "couldn't continue with the interview because he was crying and just extremely upset," and McInerney terminated the interview.

Subsequently, McInerney "conducted a check of the automated firearms system through CLETS." This investigation showed that Barrios had two firearms registered in his name. While the database also showed the dates the firearms were purchased, McInerney did not recall those dates.

### Officer Jeremy DeMoss's Testimony

Jeremy DeMoss was employed as a police officer with the City of Fresno. On November 1, 2021, DeMoss responded to a call regarding a report of molestation. When he arrived at the residence, he spoke to D.P. He then interviewed A.R.

A.R. seemed "very nervous," and he had difficulty talking about the allegations of molestation. He told DeMoss that he could only remember one occasion. Eventually, DeMoss asked him if he had been touched or penetrated. He got "very upset." He told DeMoss that it "was the worst detail that [DeMoss] had mentioned." DeMoss then asked if he had been penetrated, and he "shook his head[] yes." Shortly after, he threw a toy and stormed off. Later, A.R. came back and told DeMoss that Barrios had threatened to kill his sister if he said anything.

**Defense Case**

R.B., Barrios's brother, testified on Barrios's behalf. According to R.B., Barrios purchased a firearm in February of 2018. Barrios also took possession of a different firearm from R.B. in June of 2020, which R.B. had purchased in 2017. These are the only two firearms R.B. ever saw Barrios possess.

Barrios also testified on his own behalf. Starting in the summer of 2014, Barrios regularly visited L.R.'s apartment in Fresno, and he would stay overnight. However, he was never alone with A.R., he never wrestled with A.R., and he never played video games with A.R. Additionally, he did not own a firearm during this period. He purchased his first firearm in 2018.

## DISCUSSION

I. **Barrios Forfeited His Claims of Prosecutorial Misconduct and His Ineffective Assistance of Counsel Claim Fails**

*A. Additional Background*

On August 31, 2023, Barrios filed a motion for a new trial. Barrios argued, among other things, that several statements the prosecutor made during her closing and rebuttal arguments constituted misconduct. The trial court rejected this argument, holding that the prosecutor did not commit misconduct, either intentionally or unintentionally.

On appeal, Barrios once again asserts that the prosecutor committed misconduct multiple times during her rebuttal argument. According to Barrios, the prosecutor

6.

committed misconduct by: (1) stating there was no evidence that A.R.'s allegations were false, because there was such evidence and it was the jury's responsibility to weigh that evidence; (2) arguing A.R.'s mother had nothing to gain from making false allegations, because there was no evidence in the record to support this argument; (3) arguing L.R. was not on trial, because it improperly implied that Barrios was on trial and had to defend himself, "whereas [L.R.] had no similar obligation;" and (4) arguing the case ultimately came down to a credibility contest between A.R. and Barrios, because this argument "misstate[d] applicable law and water[ed] down the [prosecutor's] burden of proof."

Barrios further argues that defense counsel rendered ineffective assistance by failing to object to the prosecutor's statements, and that the trial court erred in denying his motion for a new trial on this ground.

We hold that Barrios forfeited his arguments based on prosecutorial misconduct because defense counsel did not object below, and his claim of ineffective assistance of counsel fails on direct appeal.

### B. Applicable Law re: Prosecutorial Misconduct

" ' "The applicable federal and state standards regarding prosecutorial misconduct are well established. ' "A prosecutor's … intemperate behavior violates the federal Constitution when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.' " ' [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves ' " 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " ' " (*People v. Stanley* (2006) 39 Cal.4th 913, 951.)

" 'To preserve for appeal a claim of prosecutorial misconduct, the defense must make a timely objection at trial and request an admonition.' " (*People v. Silva* (2001) 25 Cal.4th 345, 373.) Failure to do so "is excused only when 'an objection would have been futile or an admonition ineffective.' " (*People v. Fuiava* (2012) 53 Cal.4th 622, 679.)

7.

### C. Applicable Law re: Ineffective Assistance of Counsel

Barrios has the burden of proving ineffective assistance of counsel. (*People v. Pope* (1979) 23 Cal.3d 412, 425, overruled on other grounds in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10.) To establish such a claim, a defendant must show (1) his counsel's performance fell below an objective standard of reasonableness and (2) prejudice, that is, but for counsel's unprofessional error a different result would have been reasonably probable. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, at p. 694.) "Because of the difficulties inherent in making the evaluation [of counsel's performance], a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " (*Id*. at p. 689.)

"It is … particularly difficult to establish ineffective assistance of counsel on direct appeal, where we are limited to evaluating the appellate record. If the record does not shed light on why counsel acted or failed to act in the challenged manner, we must reject the claim on appeal unless counsel was asked for and failed to provide a satisfactory explanation, or there simply can be no satisfactory explanation." (*People v. Scott* (1997) 15 Cal.4th 1188, 1212.) Reversal is permitted " 'only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.' " (*People v. Arredondo* (2019) 8 Cal.5th 694, 711.)[2]

---

[2] Barrios makes more than one claim of ineffective assistance of counsel. For the sake of brevity, we include the relevant legal standards only once.

### D.  Analysis re:  Prosecutorial Misconduct

Barrios admits that defense counsel did not object to any of the instances of alleged prosecutorial misconduct or request admonitions.  Moreover, Barrios does not argue that an objection would have been futile or an admonition ineffective.  Thus, Barrios appears to implicitly concede that his claims of prosecutorial misconduct have been forfeited, and we agree.  (See, e.g., *People v. Allen* (1978) 77 Cal.App.3d 924, 935 ["It is only in the exceptional case that 'the improper subject matter is of such a character that its effect … cannot be removed by the court's admonitions.' "].)

### E.  Analysis re:  Ineffective Assistance of Counsel

As we conclude that Barrios forfeited his claims of prosecutorial misconduct, we move on to his argument that defense counsel provided ineffective assistance by failing to object and request an admonishment.  According to Barrios, defense counsel's failure to object to the alleged instances of prosecutorial misconduct was not sound trial strategy.  This claim fails.

To begin, "a mere failure to object to evidence or argument seldom establishes counsel's incompetence."  (*People v. Ghent* (1987) 43 Cal.3d 739, 772.)

Moreover, as this is a direct appeal, as the record is silent as to why defense counsel failed to object, and as defense counsel was not asked why she did not object, Barrios can only establish ineffective assistance if there could be no satisfactory explanation.  And here, there is at least one such explanation.  The challenged comments were brief and largely fleeting, so defense counsel may not have wanted to draw attention to them.  (See, e.g., *People v. Ghent*, *supra*, 43 Cal.3d at p. 773 ["Counsel may well have tactically assumed that an objection or request for admonition would simply draw closer attention to the prosecutor's isolated comments.".)  This is especially so given the trial court correctly instructed the jury on the presumption of innocence; that the filing of criminal charges was not evidence that the charges were true; not to be biased against Barrios "just because he has been arrested, charged with a crime, or brought to trial;" on

the reasonable doubt standard and the prosecutor's burden of proof; that nothing the attorneys say is evidence; and that if the attorneys' comments on the law conflicted with the court's instructions, the jury must follow the instructions. (*People v. Centeno* (2014) 60 Cal.4th 659, 676 [" 'When argument runs counter to instructions given a jury, we will ordinarily conclude that the jury followed the latter and disregarded the former, for "[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade." ' "].)

Accordingly, Barrios's ineffective assistance of counsel argument fails on direct appeal.

## II. Defense Counsel Was Ineffective for Not Objecting to Use of the Oral Copulation Incident as a Basis to Convict on Count 3

### A. Additional Background

At the preliminary hearing, A.R. testified that Barrios sodomized him at Barrios and L.R.'s apartment in Fresno. A.R. did not testify about any other incidents. However, McInerney testified that A.R. told him it happened approximately five times.

At trial, A.R. testified, for the first time, that Barrios forced A.R. to orally copulate him. A.R. also testified that he did not tell police officers about this incident or testify about this incident at the preliminary hearing because he did not want to talk about it. During her closing argument, the prosecutor argued that Barrios could be convicted on count 3 based on either the sodomy incident or the oral copulation incident. Defense counsel did not object to A.R.'s testimony about the oral copulation incident or the prosecutor's argument that this incident could be used to convict Barrios on count 3, and she did not move for a mistrial.

10.

However, in her motion for a new trial, defense counsel argued that Barrios's right to due process was violated because the charge regarding oral copulation was not established at the preliminary hearing. The trial court denied the motion.[3]

On appeal, Barrios argues that the trial court erred by denying the motion and that defense counsel was ineffective because she failed to object at trial.

### B. Applicable Law

" 'It is a fundamental principle of due process that "one accused of a crime must be 'informed of the nature and cause of the accusation.' [Citation.]" [Citation.] This requirement is satisfied when the accused is advised of the charges against him so that he has a reasonable opportunity to prepare and present a defense and is not taken by surprise by the evidence offered at trial.' " (*People v. Peyton* (2009) 176 Cal.App.4th 642, 657 (*Peyton*).) " 'The information plays a limited but important role—it tells a defendant what kinds of offenses he is charged with and states the number of offenses that can result in prosecution. However, the time, place, and circumstances of charged offenses are left to the preliminary hearing transcript.' " (*People v. Pitts* (1990) 223 Cal.App.3d 606, 904 (*Pitts*); see also *People v. Graff* (2009) 170 Cal.App.4th 345, 362-366 (*Graff*).) "Where … the particulars are *not* shown by the preliminary hearing transcript, the defendant is *not* on notice in such a way that he has the opportunity to prepare a meaningful defense." (*Pitts,* at p. 905; see also *Graff*, at pp. 362-366.)

Pursuant to section 1009, "[t]he court may allow amendment of the accusatory pleading to correct or make more specific the factual allegations of the offense charged at any stage of the proceeding, up to and including the close of trial, if there would be no prejudice to the defendant. [Citations.] Section 1009 further provides, however, that '[a]n indictment or accusation cannot be amended so as to change the offense charged,

---

[3] The trial court denied the motion for a new trial in full, but did not specifically address this argument.

11.

nor an information so as to charge an offense not shown by the evidence taken at the preliminary examination.' " (*Graff*, *supra*, 170 Cal.App.4th at pp. 361-362.)

### C. Analysis

To begin, the People argue that by failing to object to A.R.'s testimony or ask that the jury be instructed that the oral copulation incident could not be the basis of a conviction on count 3, Barrios forfeited his argument that his right to due process was violated because the charge regarding oral copulation was not established at the preliminary hearing. We agree.[4]

However, the People go on to argue that we should reject Barrios's ineffective assistance of counsel claim for the same reason, because "[a] contrary rule would result in swallowing the forfeiture rule with the ineffective assistance of counsel exception, and encourage defendants to remain silent in similar circumstances, confident in reversal on appeal." While we understand the People's position, the People cite to no law suggesting we should reject an ineffective assistance of counsel claim on this basis alone. Moreover, as the error and prejudice are clear, we see no reason why we should not address this claim on direct appeal. Accordingly, we turn to Barrios's claim of ineffective assistance of counsel.

---

[4] "The forfeiture doctrine is a 'well-established procedural principle that, with certain exceptions, an appellate court will not consider claims of error that could have been—but were not—raised in the trial court. [Citation.]' [Citations.] Strong policy reasons support this rule: 'It is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided. [Citations.]' [Citation.] ' " ' "The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them. If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal." ' " ' " (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114; accord, *People v. Salazar* (2016) 63 Cal.4th 214, 239–240; *People v. French* (2008) 43 Cal.4th 36, 46.)

12.

To determine whether defense counsel's performance fell below an objective standard of reasonableness, we must first determine whether Barrios could legally have been convicted on count 3 based on the oral copulation incident.

At the preliminary hearing, A.R. testified about one instance of sodomy. While he did not affirmatively state there were no other instances of sexual abuse, he did not testify as to any. Additionally, McInerney testified that A.R. told him Barrios sodomized him approximately five times. No evidence was presented suggesting that Barrios ever forced A.R. to orally copulate him. However, at trial, A.R. testified that Barrios forced A.R. to orally copulate him. A.R. further testified that he did not tell officers about this incident or testify about it at the preliminary hearing because he "just didn't want to talk about [it]."

The People argue that the general allegations made by A.R. during the preliminary hearing are sufficient to provide notice that Barrios could also be convicted based on the separate oral copulation incident. The People are incorrect.

According to the People, only material variances deprive a defendant of due process, and the differences between the preliminary hearing testimony and the trial testimony were not material. The People are correct that only material variances deprive a defendant of the required notice. For example, in *Peyton*, the defendant was charged "with four counts of aggravated sexual assault, specifically, three counts of oral copulation (§§ 269, subd. (a)(4), 288a) and one count of sexual penetration (§§ 269, subd. (a)(5), 289, subd. (a))" after he waived his right to a preliminary hearing. (*Peyton*, *supra*, 176 Cal.App.4th at p. 649.) Subsequently, the prosecutor "changed the charging allegations to allege three counts of sexual penetration and one count of oral copulation, rather than three counts of oral copulation and one count of sexual penetration." (*Ibid.*) Following the prosecutor's case-in-chief, a section 288, subdivision (b) charge was added. (*Id.* at p. 655.) The defendant was convicted on all counts. (*Id.* at p. 645.)

On appeal, the *Peyton* court reversed the section 288, subdivision (b) charge because it was an additional charge not pled in the complaint at the time the defendant waived his preliminary hearing. (*Peyton*, *supra*, 176 Cal.App.4th at pp. 654-655.) However, the court affirmed the convictions on the other four charges. (*Id.* at p. 660.)

According to the *Peyton* court, "the only difference between the amended complaint, to which [the] defendant waived his right to a preliminary hearing, and the second amended information, upon which [the] defendant was convicted at trial, is that the bases of two of the four alleged section 269 charges were changed from oral copulation to sexual penetration." (*Peyton*, *supra*, 176 Cal.App.4th at p. 659.) The "defendant's convictions of the two counts of aggravated assault by sexual penetration were not in significant variance from the charges in the amended complaint …. The operative pleading under which [the] defendant was convicted did not charge him with violating a different Penal Code section from that alleged in the amended complaint. Both pleadings were based on the same course of conduct which occurred over an extremely limited time period and involved the same victim. Both pleadings dealt with the same underlying acts, oral copulation and sexual penetration. [The] [d]efendant was not presented with a moving target; he was fully aware of what he had to defend against. Additionally, the punishment for the crimes charged in the amended complaint and the second amended information were identical. The substantial rights of [the] defendant were simply not implicated." (*Id.* at p. 660.)

However, *Peyton* is readily distinguishable, and the variances here are material. It is true that, like the defendant in *Peyton*, Barrios was not charged with violating a different section of the Penal Code and the new incident involved the same victim. However, unlike *Peyton*, the time period in this case was not extremely limited. Instead, the time period spanned about a year.

Moreover, unlike *Peyton*, the prosecutor here did not change the basis of a charge from one sexual act to another. Instead, the prosecutor argued that the oral copulation

14.

and the sodomy were separate acts, and that either act could support a conviction on count 3.

Finally, unlike in *Peyton*, the change here increased Barrios's exposure. During her closing argument, the prosecutor argued that the sodomy incident described by A.R. was the basis for count 1 and count 2. The prosecutor further argued that the jury could find Barrios guilty of count 3 based on either the same sodomy incident or the oral copulation incident. Given that the oral copulation incident was a separate incident, instead of facing punishment on only one count, with two counts being stayed, Barrios faced (and in fact received) an additional consecutive term on count 3. (See § 654, subd. (a) ["An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."].)

Based on the foregoing, unlike the variances in *Peyton*, the variances here are material. (See *People v. Burnett* (1999) 71 Cal.App.4th 151, 155, 171 [reversing a conviction where the amendment to the information, "combined with the prosecutor's argument at trial and court's instruction, allowed [defendant] to be convicted based on a completely different incident than that shown by the evidence at the preliminary hearing"]; *Pitts*, *supra*, 223 Cal.App.3d at pp. 907-908, fn. omitted ["[The People] essentially argue[] [the] defendants were on notice to defend against any and all lewd acts involving any child shown by preliminary hearing evidence to have been present during the molestations. To hold such variances are immaterial, however, would be to hold that due process is satisfied as long as the preliminary hearing evidence shows five violations of a statute and the evidence at trial shows the same number of violations of the same statute, regardless of the particulars. Such a holding would basically do away with use of the preliminary hearing transcript as a means for giving fair notice."].)

Finally, we recognize that in child molestation cases, generic testimony at a preliminary hearing can be sufficient to satisfy due process. (See *People v. Jones* (1990)

51 Cal.3d 294, 299–300, 317–321.) We also recognize the reality that, when child victims are involved, "the youth of the victim and the trauma … may have caused details to be forgotten." (*Graff, supra*, 170 Cal.App.4th at p. 367.) However, based on the record before us, this case does not involve either issue. The problem here is not that the evidence provided at the preliminary hearing was too general to satisfy due process. Instead, it is that, at trial, A.R. testified about a different sexual act that occurred on a different occasion than the incidents testified to at the preliminary hearing. Moreover, it does not appear that the discrepancy occurred because A.R. had forgotten about the act of oral copulation or misremembered certain details. Instead, based on A.R.'s testimony, he did not previously disclose this incident because he "just didn't want to talk about [it]."

Accordingly, Barrios could not legally have been convicted based on the oral copulation incident. Given this, and as there does not appear to be any rational tactical reason to allow the jury to consider the oral copulation incident as a separate basis for convicting Barrios, defense counsel rendered ineffective assistance by failing to object to the prosecutor's use of this incident as a basis for conviction. (*People v. Burnett, supra*, 71 Cal.App.4th at p. 181 ["Since [the defendant] could not constitutionally be prosecuted for or convicted of an offense not shown by the evidence at the preliminary hearing, defense counsel should have objected or taken some action to protect [the defendant's] rights, at least when it became clear the jury was going to be asked to convict on the basis of either the incident shown by the preliminary hearing evidence *or* the incident not addressed at the preliminary hearing."]

As to whether Barrios suffered prejudice, we do not know whether the jury convicted Barrios based on the sodomy incident or the oral copulation incident. However, either way, Barrios was prejudiced by the error. Had defense counsel objected and the incident been excluded as a means of conviction, Barrios could not have been convicted based on the oral copulation incident. And even if Barrios had still been convicted on count 3 based on the sodomy incident, as this incident was also the basis of

16.

counts 1 and 2, the trial court would have been required to stay the sentence on two of the counts instead of just one. (§ 654.)

Accordingly, defense counsel rendered ineffective assistance and the conviction on count 3 will be reversed.[5]

### III. The Trial Court Did Not Err by Denying Barrios's Motion for New Trial Based on the Alleged Misconduct of Juror No. 29

#### A. *Additional Background*

During voir dire, the trial court asked the prospective jurors, "does anyone have any ethical, religious or political beliefs that would prevent you from serving as a juror in this case?" Juror No. 29 did not respond in the affirmative. The trial court also told the potential jurors that the role of a juror is "to consider the evidence presented to you, determine the facts on that evidence, and apply the law as I give it to you to the facts as you determine them to be." The court asked the prospective jurors if any of them believed they could not perform this role. Juror No. 29 did not respond in the affirmative. Juror No. 29 did disclose that he had been a law enforcement officer, but he stated that this would not impair his ability to be fair and impartial.

At some point Juror No. 29 indicated that he needed to speak to the trial court. During a recess, Juror No. 29 addressed the court and the parties. Juror No. 29 stated:

> "I just wanted to inquire of the Court and Your Honor regarding my background as a former political candidate and endorsed candidate of [*sic*] multiple county sheriff's [*sic*] as well as District Attorney's [*sic*] within the recent months, and I don't want it to be something that would be causing problems for impeachment of myself or problems with a deliberation, I guess, in the future. Not that it's going to make me in any way impartial, but I don't want it to create some unforeseen issue in the future."

Juror No. 29 also disclosed that he knew "the District Attorney for Fresno County, and … was endorsed by Tulare County District Attorney, and multiple county sheriff's

---

[5] As we are reversing the conviction on count 3, we do not address Barrios's alternative argument that the trial court erred by imposing a consecutive term on count 3.

[*sic*] from Kern County, Tulare County, and then we have a new elected sheriff for Fresno [C]ounty, Madera."

After Juror No. 29 left the courtroom, the trial court asked the parties if they wanted to place anything on the record. Both said no. Voir dire continued, and Juror No. 29 was ultimately selected to be a juror.

In his motion for a new trial, Barrios argued that Juror No. 29 committed misconduct. According to Barrios, while this juror disclosed that he had been a political candidate and had been endorsed by multiple sheriffs and district attorneys, he failed to disclose that he was also a current candidate. Juror No. 29 announced his campaign via social media on February 23, 2023, "just a little over a month" after the verdict, and "he had … obtained endorsements for his campaign prior to Barrios'[s] trial." Moreover, his official website stated that "*he has a strong political stance against crime*." He did not disclose this stance during jury selection. Finally, on July 12, 2023, he made comments regarding sex crime legislation, posting on social media that " '[i]t's troubling and horrifying to learn that Democrats in the California State Assembly don't think the sex trafficking of minors is a serious crime. As a former law enforcement officer I can tell you this disgusting activity is going on across our state and through our porous international borders. We need to stop it and save these teens and young girls.' "

Barrios argued that this evidence shows that Juror No. 29 could not be impartial. Additionally, Barrios asserted his counsel was not aware of Juror No. 29's "strong political beliefs" or his "active political campaign." Barrios further asserted that, had Juror No. 29 disclosed this information, his counsel would have challenged Juror No. 29 for cause or exercised a preemptory challenge.

The trial court rejected this argument, holding that Juror No. 29 did not commit misconduct, in part because Juror No. 29 did disclose that he was currently running for office.

On appeal, Barrios once again argues that Juror No. 29 failed to disclose his current candidacy. Barrios further argues that the trial court erred by denying his motion for a new trial because being a current candidate is materially different than being a former candidate. As an example, Barrios argues that as a current candidate, Juror No. 29 may have been worried that his " 'tough on crime' " stance would be attacked if he found Barrios not guilty. Additionally, Juror No. 29 "might likewise be concerned about how many *future* endorsements from law enforcement officials and prosecutors (including the Fresno County DA) he might receive once word of his not guilty vote on the jury got out."

### B. Applicable Law

"A defendant accused of a crime has a constitutional right to a trial by unbiased, impartial jurors." (*People v. Nesler* (1997) 16 Cal.4th 561, 578.) Section 1181 permits a trial court to grant a new trial when the jury has "been guilty of any misconduct by which a fair and due consideration of the case has been prevented." (§ 1181, subd. 3.)

"Courts evaluate a motion for a new trial based on jury misconduct in three steps: (1) determine what evidence is admissible; (2) if there is admissible evidence, decide if it establishes misconduct; and (3) if there is misconduct, determine whether it was prejudicial." (*People v. Flores* (2021) 70 Cal.App.5th 100, 107.)

"A juror who conceals relevant facts or gives false answers during the voir dire examination … undermines the jury selection process and commits misconduct." (*In re Hitchings* (1993) 6 Cal.4th 97, 111.) "As a general rule, juror misconduct 'raises a presumption of prejudice that may be rebutted by proof that no prejudice actually resulted.' " (*Id.* at pp. 118-119.)

### C. Standard of Review

"We accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence. [Citations.] Whether prejudice arose from juror misconduct, however, is a mixed question of law and fact subject to an

appellate court's independent determination." (*People v. Nesler*, *supra*, 16 Cal.4th at p. 582; see also *People v. Herrera* (2024) 102 Cal.App.5th 178, 195.)

### D. Analysis

Barrios's argument is based on the assertion that Juror No. 29 failed to disclose his current candidacy, and we can infer that he was a current candidate at the time of trial because "[i]t is unlikely that all of the juror's plans to run for office occurred in the short period of time between the end of the trial and the motion for a new trial." However, even assuming the evidence presented by Barrios is admissible, his claim fails.

During voir dire, Juror No. 29 indicated that he needed to speak to the trial court. When Juror No. 29 spoke privately with the trial court and the parties, he stated, "I just wanted to inquire of the Court and Your Honor regarding my background as a former political candidate *and endorsed candidate of* [*sic*] *multiple county sheriff's* [*sic*] *as well as District Attorney's* [*sic*] *within the recent months* …." (Italics added.)

Given this statement, we agree with the trial court that Juror No. 29 did disclose his current candidacy, along with the endorsements he had *recently* received. Moreover, as described above, Juror No. 29 indicated that he did not have any ethical, religious, or political beliefs that would prevent him from serving as a juror; that he could determine the facts based on the evidence presented; that he could apply the law given by the trial court; and that his law enforcement background did not impair his ability to be fair and impartial. Given Juror No. 29's statements and disclosures, including that he was a former law enforcement officer and that he had recently been endorsed by law enforcement officials, he did not commit misconduct by concealing relevant facts (intentionally or otherwise).

Accordingly, the trial court did not err by denying Barrios's motion for a new trial based on juror misconduct.

### IV. Barrios May Not Challenge the Trial Court's Section 1108 Ruling on Appeal Because His Counsel Elicited the Challenged Evidence at Trial

#### A. Additional Background

The prosecutor filed a motion in limine, seeking to admit two prior misdemeanor convictions pursuant to Evidence Code section 1108.[6] In 2009, Barrios pled no contest to violating section 261.5, subdivision (a).[7] In 2010, he pled no contest to violating section 261.5, subdivision (b).[8]

Barrios asked that these convictions be excluded pursuant to Evidence Code section 352.[9] According to Barrios, both cases involved consensual relationships. In the 2009 case, the relationship began when both he and the victim were under 18, and they have maintained a positive relationship. In the 2010 case, the victim was 17 and a half.

The trial court ruled as follows:

> "[The] Court believes that it would be appropriate to admit these … cases under Evidence Code Section 1108.
>
> "The Court, in looking at the nature of the crimes …, the Court does agree with [the prosecutor] that those offenses are not as – they're not as egregious, in the Court's humble opinion, as what is alleged in this case.

---

[6] This section states: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (Evid. Code, § 1108, subd. (a).)

[7] This section states: "Unlawful sexual intercourse is an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor. For the purposes of this section, a 'minor' is a person under 18 years of age and an 'adult' is a person who is 18 years of age or older." (§ 261.5, subd. (a).)

[8] This section states: "A person who engages in an act of unlawful sexual intercourse with a minor who is not more than three years older or three years younger than the perpetrator, is guilty of a misdemeanor." (§ 261.5, subd. (b).)

[9] This section states: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

"Moreover, the Court, in considering the factors such as the nature, relevance, possible remoteness, the degree of certainty of the commission and likelihood of misleading, confusing, or distracting the jurors, is similar to the charged offense, it's likely prejudicial impact on jurors, the Court finds that in balancing all of that, that it is appropriate to allow these in.

"Furthermore, the Court will provide the admonishment pursuant to CalCrim 1191 that this evidence is to be considered for a limited purpose and only after it's been proven by a preponderance of the evidence and for … those reasons, the Court is going to allow that."

Despite this ruling, the prosecutor did not introduce evidence regarding either prior conviction during her case-in-chief. Instead, on direct examination during Barrios's case, Barrios admitted that, in 2009 when his first child was born, he was almost 19 and the mother was 16 or 17. Barrios further testified that this was reported to law enforcement, and he took a plea deal for a misdemeanor. Finally, he testified that this relationship began when he was under the age of 18, and, for the "most part," he maintained a positive relationship with the mother. The prosecutor did not question Barrios regarding either prior conviction or mention them during her closing arguments.

### B. Analysis

On appeal, Barrios argues that the trial court erred by admitting evidence of a prior sexual offense pursuant to section 1108. The People argue that Barrios "forfeited his claim by introducing the evidence after conclusion of the prosecution's case-in-chief." We hold that Barrios may not challenge the trial court's ruling on appeal.

Despite obtaining permission from the trial court to introduce the prior sexual offenses as evidence to prove that Barrios was guilty in this case, the prosecutor did not introduce this evidence during her case-in-chief. There is also nothing in the record suggesting that the prosecutor intended to use this evidence to impeach Barrios. Despite this, without asking for clarification regarding the admissibility of this evidence during Barrios's case or the prosecutor's rebuttal, and without objecting to the introduction of this evidence at this stage of the trial, Barrios introduced the evidence himself during his

case. On this record, Barrios cannot argue that its admission was error on appeal. (*People v. Moran* (1970) 1 Cal.3d 755, 762 ["Since defendant is responsible for the introduction of the evidence, he cannot complain on appeal that its admission was error."]; *People v. Williams* (2009) 170 Cal.App.4th 587, 620 ["the testimony about which defendant now complains was elicited by his own counsel. Thus, any error was invited, and defendant may not challenge that error on appeal."]; see also *People v. Ramos* (1997) 15 Cal.4th 1133, 1168; *People v. Bell* (2020) 47 Cal.App.5th 153, 193.)

## V.     Barrios's Cumulative Errors Argument Fails

Finally, Barrios argues "that the trial errors complained of here, even if, in isolation, are classified by this Court as 'harmless error' when taken in combination, served to violate [Barrios's] right to due process of law, which warrants reversal."

This argument fails. We found error regarding count 3, and we are reversing the conviction on that count. However, we found no other errors. There is thus no cumulative prejudice based on multiple otherwise harmless errors. (See *People v. Duong* (2020) 10 Cal.5th 36, 75; *People v. Westerfield* (2019) 6 Cal.5th 632, 728.)

## DISPOSITION

Barrios's conviction on count 3 is reversed, and the matter is remanded to the trial court to conduct further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

SMITH, J.

WE CONCUR:


PEÑA, Acting P. J.


SNAUFFER, J.

23.